**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )   **Case No: 1:17-cv-01266-WHP** |
| | ) |
| JAMEX TRANSFER SERVICES, LLC, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE BRIDGER PARTIES' AND FERRELLGAS OFFICERS'**
**<u>MOTION TO INTERVENE</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

    A.    The Relevant Parties and Background to the Dispute ............................... 2

    B.    Procedural History ................................................................................. 7

ARGUMENT ................................................................................................................. 8

I.    THE BRIDGER PARTIES ARE ENTITLED TO INTERVENTION AS OF
RIGHT ....................................................................................................................... 8

    A.    Rule 24 Applies to this Motion. ............................................................ 8

    B.    The Motion is Timely. .......................................................................... 9

    C.    The Proposed Intervenors Have a Direct, Substantial and Legally
Protectable Interest in this Action. ...................................................... 11

    D.    Disposing of This Action Would Impair the Proposed Intervenors' Ability
to Protect Their Interests. ................................................................... 14

    E.    The Existing Parties Do Not Adequately Represent the Proposed
Intervenors' Interests. ....................................................................... 16

    F.    The Proposed Intervenors Have Meritorious Defenses to Confirmation of
the Alleged Arbitration Award. ........................................................... 16

II.    IN THE ALTERNATIVE, THE PROPOSED INTERVENORS SHOULD BE
GRANTED PERMISSIVE INTERVENTION .............................................................. 17

CONCLUSION ............................................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Aristocrat Leisure, Ltd. v. Deutsche Bank Trust Co. Americas*
   262 F.R.D. 348 (S.D.N.Y. 2009) .........................................................................10

*Brennan v. N.Y.C. Bd. of Educ.*
   260 F.3d 123 (2d Cir. 2001)........................................................................9, 12, 13, 17

*Brooks v. Flagg Bros., Inc.*
   63 F.R.D. 409 (S.D.N.Y. 1974) ..........................................................................17

*Brooks v. Sussex County State Bank*
   167 F.R.D. 347 (N.D.N.Y. 1996) ........................................................................16

*Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*
   No. 06-cv-2875, 2007 WL 2593000 (S.D.N.Y. Sept. 7, 2007) ..........................9, 11

*Compagnie Noga d'Imp. et d'Exp. S.A. v. Russian Fed'n*
   2005 U.S. Dist. LEXIS 14432 (S.D.N.Y. July 20, 2005) ......................................14

*D'Amato v. Deutsche Bank*
   236 F.3d 78 (2d Cir. 2001).................................................................................10

*Diduck v. Kaszycki & Sons Contractors, Inc.*
   149 F.R.D. 55 (S.D.N.Y. 1993) ..........................................................................17

*Grumman Flxible Corp. v. Dole*
   102 F.R.D. 36 (D.D.C. 1983)...............................................................................15

*In re Bank of New York Derivative Litig.*
   320 F.3d 291 (2d Cir. 2003).................................................................................10

*Int'l Design Concepts, LLC v. Saks Inc.*
   486 F. Supp. 2d 229 (S.D.N.Y. 2007)..................................................................18

*Katz v. Berisford Int'l PLC*
   96 Civ. 8695 (JGK), 2000 U.S. Dist. LEXIS 17314 (S.D.N.Y. Nov. 17, 2000) .....................14

*New York Public Interest Research Group, Inc. v. Regents of University of N. Y.*
   516 F.2d 350 (2d Cir. 1975)................................................................................12

*Rosenshein v. Kleban*
   918 F. Supp. 98 (S.D.N.Y. 1996) ........................................................................17

*S&S Kings Corp. v. Westchester Fire Ins. Co.*
   No. 16-CV-2016 (RA), 2017 WL 396741 (S.D.N.Y. Jan. 27, 2017) ......................15

*Sackman v. Liggett Group, Inc.*
    167 F.R.D. 6 (E.D.N.Y. 1996) .................................................................................13, 17

*Tachiona ex rel. Tachiona v. Mugabe*
    186 F. Supp. 2d 383 (S.D.N.Y. 2002) ........................................................................9, 12

*Techcapital Corp. v. Amoco Corp.*
    No. 99 CIV. 5093 (AGS), 2001 WL 267010 (S.D.N.Y. Mar. 19, 2001) ...................................8

*Telenor Mobile Commc'ns AS v. Storm LLC*
    524 F. Supp. 2d 332 (S.D.N.Y. 2007), *aff'd,* 584 F.3d 396 (2d Cir. 2009) .......................12, 18

*Trbovich v. United Mine Workers of Am.*
    404 U.S. 528 (1972) ........................................................................................16

*United Airlines, Inc. v. McDonald*
    432 U.S. 385 (1977) ........................................................................................10

*United States v. Pitney Bowes, Inc.*
    25 F.3d 66 (2d Cir. 1994) ..............................................................................15, 18

## STATUTES

9 U.S.C. § 13 ...............................................................................................13

Fed. R. Civ. P. 24(a) ............................................................................... *passim*

Fed. R. Civ. P. 24(b) ............................................................................... *passim*

Fed. R. Civ. P. 81(a)(6)(b)) ...............................................................................8

## OTHER AUTHORITIES

7C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice
    and Procedure § 1908.1 (3d ed. 1998) ...................................................................14

Restatement (Second) of Judgments § 28 ...................................................................15

Non-parties Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P. (the "Bridger Parties") and Julio Rios and Jeremy Gamboa (the "Officers," together with the Bridger Parties, the "Proposed Intervenors") by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion to intervene in this action, pursuant to Rule 24(a)(2) and Rule 24(b)(1) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Petitioner Eddystone Rail Company, LLC ("Eddystone") seeks to convert a "settlement award" (the "Alleged Arbitration Award") – derived from Eddystone's collusive settlement agreement (the "Settlement Agreement") with respondent Jamex Transfer Services, LLC ("JTS") and the "entities that controlled it" – into a nearly $140 million judgment of this Court that it has ***admitted*** it never intended to enforce against a party to the Settlement Agreement. *See* Transcript of April 13, 2017 Preliminary Conference at 9:8-11 (counsel for Eddystone admitting that Eddystone "obviously [was]n't looking for a recovery against" JTS because JTS "had no assets"), *id.* at 10:12-14 ("a settlement with that entity and with, of course, it's the entities that controlled that entity") (comments of Eddystone's counsel). Instead, Eddystone seeks to hold only the ***Proposed Intervenors*** liable for "all amounts awarded" by the arbitrators through a separate action commenced by Eddystone against the Proposed Intervenors in the Eastern District of Pennsylvania.

As described more fully in the Proposed Intervenors' *Answer to the Petition and Cross-Petition to Vacate*, nothing in the Federal Arbitration Act requires this Court to convert a private settlement agreement and "settlement award" into a judgment of this Court. *See* Zensky Declaration Ex. G. Further, respondent JTS (who chose to skip the April 13 conference in this matter) has made clear that it "does not oppose confirmation of the arbitration award." *See Answer to Petition* [Docket No. 23] at 1. Thus, because there is no adversity whatsoever

between the existing parties to this collusive action, the interests of the Proposed Intervenors are clearly not protected. Despite Eddystone's attempt to enforce the Alleged Arbitration Award against the Proposed Intervenors in the Eastern District of Pennsylvania, Eddystone asserts *here* that the Proposed Intervenors have no right to intervene in *this* action or challenge its confirmation. This Court should not permit such gamesmanship. As shown below, the Proposed Intervenors are plainly entitled to intervene in this action as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure and, in the alternative, should be permitted to intervene under the permissive standard governed by Rule 24(b)(1), in each case as a respondent and in opposition to Eddystone's petition.

## STATEMENT OF FACTS

**A.     The Relevant Parties and Background to the Dispute**

In February 2013, Eddystone entered into the Eddystone Rail Facilities Services Agreement (the "RSA") with Bridger Transfer Services, LLC ("BTS" and, as later renamed under new ownership, Jamex Transfer Services, LLC ("JTS")), pursuant to which Eddystone agreed to construct or improve and to operate a rail and barge facility in Eddystone, Pennsylvania, that would transfer crude oil from railcars to river barges.[1] At the time the RSA was entered, BTS was a subsidiary of Proposed Intervenor Bridger Logistics, LLC ("Bridger Logistics"), which in turn was a subsidiary of non-party Bridger LLC. Several years after the RSA was entered into, Proposed Intervenors Ferrellgas Partners, L.P., and Ferrellgas L.P. acquired Bridger Logistics and, in turn, its subsidiary, BTS. Subsequently, in February 2016, Bridger Logistics sold BTS to non-party Jamex Transfer Holdings, LLC (the "Buyer"), which renamed BTS as JTS. As part of that sale, among other things, (a) Bridger Logistics (the seller)

provided more than $4 million to the Buyer to ensure all of the known outstanding amounts that were due to Eddystone through the effective date of sale would be paid, (b) the Buyer expressly acknowledged that it would assume all post-closing obligations to Eddystone, and (c) the Buyer's parent (and JTS's ultimate owner), Jamex Marketing LLC, guaranteed such assumed obligations. *See* Zensky Decl. Ex. C at §§ 2.1(b), 2.3(c), 4-5. After the sale to the Buyer, JTS (under new ownership) allegedly breached the RSA and damaged Eddystone. *See* Petition to Confirm Arbitration Award [Docket No. 1] (the "Petition") ¶ 8. Eddystone has never alleged a pre-closing breach of the RSA by BTS.

The RSA contains an arbitration clause which requires the parties to arbitrate disputes in accordance with the Rules of the Society of Maritime Arbitrators, Inc., provided that "the arbitrators shall have no authority, power or right to alter, change, amend, modify, supplement or subtract from the terms of the Agreement," including pursuant to any side agreements between the parties that that contain terms that are different from the RSA. RSA ¶ 16(b)(vi). In April 2016, Eddystone commenced an arbitration against JTS initially seeking $3.87 million in damages arising out of JTS's alleged failure to make certain required payment under the RSA.[2] JTS submitted a statement of defenses and counterclaims in June 2016 in which it denied any liability, asserted numerous defenses to Eddystone's claims, and lodged counterclaims against Eddystone for fraud, fraudulent inducement, negligent misrepresentation, and breach of contract. In July 2016, JTS filed a supplement to its counterclaims in which it alleged that it suffered specific damages in excess of $11 million due to Eddystone's conduct. Eventually, Eddystone

---

[1] The RSA is attached as Exhibit 1 to the *Declaration of Evan Glassman in Support of the Petition to Confirm the Arbitration Award* [Docket No. 5], and is also attached as Exhibit B to the *Declaration of David M. Zensky* filed concurrently herewith (the "Zensky Declaration").

[2] Eddystone's Demand for Arbitration, JTS's Statement of Defenses and Counterclaims, and JTS's Supplement to Counterclaims, were publicly filed in the action entitled *Eddystone Rail Company, LLC v. Ferrellgas Partners, L.P.*, Case No. 1:16-mc-00295-P1 (S.D.N.Y.) [Docket No. 3].

apparently sought damages for *future* deficiency payments that it alleged would be owed under the RSA through June 2019.[3]

Eddystone contends that JTS has no assets.  Transcript of April 13, 2017 Preliminary Conference at 9:8-11 (comments of Eddystone's counsel).  Eddystone also contends that, on January 5, 2017, Eddystone and JTS, and the entities that control JTS, entered into a Settlement Agreement pursuant to which JTS stipulated to its liability an amount that included the full amount Eddystone sought for past and future breach of contract damages (without applying any discount to account for the present value of the future payments or potential mitigation) and consented to entry of an arbitration award against ***it***, but not against, apparently, the entities that controlled JTS during the arbitration and at the time of the alleged breach.  *See id.* at 10:12-14 (comments of Eddystone's counsel); Petition ¶ 9.  As requested by the parties pursuant to the Settlement Agreement, on January 24, 2017 the arbitrators then issued an arbitration award (the "Alleged Arbitration Award") awarding Eddystone the amount agreed upon in the Settlement Agreement.  *See* Petition ¶ 10.  Both Eddystone and JTS consented to and signed the Alleged Arbitration Award, and Eddystone now seeks an order confirming the Alleged Arbitration Award, thereby converting their Settlement Agreement into a federal court judgment, with JTS's consent.

The Proposed Intervenors were not parties to the arbitration and are not parties to the Settlement Agreement.  Nor were they affiliated with BTS, now named JTS, at the time that the alleged breach occurred.  Indeed, the Proposed Intervenors' only connection is that they were affiliated with BTS *prior* to its sale to the Buyer when it was renamed JTS, and *prior* to the breach giving rise to the arbitration.  As such, none of the Proposed Intervenors had any reason

---

[3] The maximum amount of deficiency payments could be collected between April 2016 and June 2019 is approximately $134,000,000.  That number is calculated by multiplying the total Volume Commitment (as defined in the RSA) of 64,750 barrels/day by the total number of days from April 2016 to the end of June 2019, and then multiplying that result by the Deficiency Volume Charge (as defined in the RSA) of $1.75/barrel.

to have tried to intervene in the arbitration.   Nevertheless, Eddystone is already seeking to enforce the Alleged Arbitration Award against the Proposed Intervenors, albeit in another court. Specifically, on February 2, 2017, Eddystone filed a complaint against the Proposed Intervenors in the United States District Court for the Eastern District of Pennsylvania.  *See Eddystone Rail Company, LLC v. Bridger Logistics LLC, et al.*, Case No. 2:17-cv-00495-RK (E.D. Pa.) (the "Pennsylvania Action").[4]

Eddystone alleges in its complaint that Bridger Logistics was the alter ego of JTS and seeks to hold each of the Proposed Intervenors liable for "all amounts awarded" by the arbitration panel to Eddystone.  The Proposed Intervenors believe that Eddystone's complaint in the Pennsylvania Action lacks any merit and have moved to dismiss the complaint in its entirety for failure to state a claim.[5]  The motion to dismiss was fully briefed as of April 21, 2017 and is currently pending.  Despite alleging in the Pennsylvania Action that Bridger Logistics was JTS's alter ego, Eddystone never attempted to serve an arbitration demand on any of the Proposed Intervenors, and none of the Proposed Intervenors had reason to believe that Eddystone would seek to hold them liable for any award issued in the arbitration prior to the commencement of the Pennsylvania Action.

There is no dispute that the Alleged Arbitration Award that Eddystone now seeks to convert into a federal judgment "was a settlement award" and not a resolution of Eddystone's claims or JTS's counterclaims on the merits.  *See* Transcript of April 13, 2017 Preliminary

---

[4] The Complaint in the Pennsylvania Action is attached as Exhibit D to the Zensky Declaration, and was also enclosed with the Letter from David M. Zensky to the Hon. William H. Pauley III dated Feb. 28, 2017 [Docket No. 8] and the Letter from Jeremy A. Fielding to the Hon. William H. Pauley III dated March 2, 2017 [Docket No. 10].

[5] *See* Memorandum of Law In Support Of Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P.'s Motion To Dismiss Plaintiff's Complaint dated  March 16, 2017 (Pennsylvania Action Docket No. 35); Officers' Motion to Dismiss for Lack of Jurisdiction and Joinder of the Bridger Defendants' Motion to Dismiss (Pennsylvania Action Docket No. 34).

Conference at 4:13-15; 4:22-25 ("Your Honor, what happened was that ultimately in this arbitration, as in many cases, there was a settlement reached by the parties. . . . . Pursuant to the rules of the Society of Maritime Arbitrators, there was a settlement award that was entered on January 24.") (comments of Eddystone's counsel).  Indeed, the settlement was reached "before the final hearing, where Jamex *would have* presented its defense."  *Id.* at 9:3-5 (comments of Eddystone's counsel) (emphasis added).   Moreover, the Settlement Agreement and Alleged Arbitration Award bear all of the hallmarks of collusion.  According to Eddystone, Eddystone was pursuing an "entity that had no assets" in the arbitration, and "so obviously [was]n't looking for a recovery against that entity," and JTS had nothing to lose by stipulating to a judgment in whatever amount Eddystone desired.  *Id.* at 9:8-11 (comments of Eddystone's counsel).  And as noted by this Court, the Alleged Arbitration Award "is not really an arbitration award.  It is a capitulation. . . . [T]he $139 million award was really a settlement with an entity that was essentially defunct."  *Id.* at 10:4-11.

Included in its Settlement Agreement, but not in the Alleged Arbitration Award, are the entities that control JTS.  *Id.* at 10:12-14 (comments of Eddystone's counsel).  Eddystone has not revealed the Settlement Agreement and the Proposed Intervenors do not know whether Eddystone granted releases, or provided payments, to the entities that control JTS in connection with the Settlement Agreement, or whether JTS and the entities that control it agreed to cooperate in Eddystone's efforts to impose the liability on the Proposed Intervenors.  The Proposed Intervenors understand, however – from Eddystone's statements in the Pennsylvania Action and before this Court – that Eddystone seeks to impose liability only on the Proposed Intervenors, and not on any of the parties to the Settlement Agreement.

### B. Procedural History

Eddystone commenced the present proceeding by filing its Petition to Confirm on February 17, 2018, but did not attempt to serve any notice on any of the Proposed Intervenors. *See* Zensky Declaration ¶ 1.  After learning about the pendency of this action through their own diligence, the Bridger Parties notified Eddystone of their intent to intervene on February 20, and on February 21 Eddystone stated that it would not consent to intervention.  *Id.* ¶ 2.   On February 28 the Bridger Parties filed a letter in this action seeking leave to file the present Motion.  *See* Letter from David M. Zensky to the Hon. William H. Pauley III dated Feb. 28, 2017 [Docket No. 8].  The Officers filed their letter requesting leave to file this Motion that same week.  *See* Letter from Jeremy A. Fielding to the Hon. William H. Pauley III dated March 2, 2017 [Docket No. 10].  On March 15, the Bridger Parties gave Eddystone notice of the limited document discovery it would require in order to avoid any delay in the event intervention is allowed, but by letter dated April 10 Eddystone stated that it would not agree to "any document discovery" in this action.  Zensky Declaration Exs. E-F.

Counsel for each of the Proposed Intervenors appeared at the preliminary conference held in this action on April 13, 2017.  JTS did not appear in this action until April 25, when it filed a one-page "Answer" to Eddystone's petition in which it curtly states that "Pursuant to a confidential settlement agreement entered into between the parties on January 5, 2017, JTS ***does not oppose confirmation of the arbitration award*** issued by a panel of the Society of Maritime Arbitrators, Inc., on January 24, 2017, a true and correct copy of which is attached to Eddystone's Memorandum of Law in Support of Petition to Confirm Arbitration Award [Dkt. No. 5] (at exhibit 2 therein)."  *See* Docket No. 23 (emphasis added).

## ARGUMENT

**I.   THE BRIDGER PARTIES ARE ENTITLED TO INTERVENTION AS OF RIGHT**

**A.      Rule 24 Applies to this Motion.**

Federal Rule of Civil Procedure 24(a), as incorporated into this proceeding by Federal

Rule of Civil Procedure 81(a)(6)(b),[6] provides that on timely motion, the court shall permit

intervention by anyone who:

> claims an interest relating to the property or transaction that is the
> subject of the action, and is so situated that disposing of the action
> may as a practical matter impair or impede the movant's ability to
> protect its interest, unless existing parties adequately represent that
> interest.

Fed. R. Civ. P. 24(a)(2).  The Second Circuit has made clear that Federal Rule of Civil Procedure

24 applies to post-arbitration proceedings governed by the Federal Arbitration Act.    In

*Association of Contracting Plumbers, Inc. v. Local Union No. 2 United Ass'n of Journeymen &*

*Apprentices of Plumbing & Pipefitting Indus.*, the Second Circuit directly considered – and

rejected – the argument that non-parties to an arbitration lack standing to seek vacatur of an

arbitration award as intervenors because Section 10 of the Federal Arbitration Act states that an

arbitration award can be vacated "upon the application of any party to the arbitration."  841 F.2d

461, 467 (2d Cir. 1988).  As noted by the Second Circuit "[o]nce the right to intervene is

established, the intervenor's status is equivalent to that of a party. . . .  [W]here intervention is

sought under Rule 24(a) (Intervention of Right), no independent ground of jurisdiction need be

asserted."  *Id*. (citation omitted).  Thus, the intervenors had standing "equal to" that of the parties

to the arbitration "and, therefore, may move to vacate the arbitration awards and injunctions

under 9 U.S.C. § 10."  *Id.; see also Techcapital Corp. v. Amoco Corp*., No. 99 CIV. 5093 (AGS),

---

[6] Federal Rule of Civil Procedure 81(a)(6)(b) provides:  "These rules, to the extent applicable, govern proceedings under. . . 9 U.S.C. [the Federal Arbitration Act], relating to arbitration."

2001 WL 267010, at *3 (S.D.N.Y. Mar. 19, 2001) (holding that nonparties to arbitration were entitled to intervene under Federal Rule 24(b)(1)(B) and to a petition to confirm or vacate award).[7]

An applicant seeking intervention by right must satisfy four factors: "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action." *Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*, No. 06-cv-2875, 2007 WL 2593000, at *2 (S.D.N.Y. Sept. 7, 2007) (quoting *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197 (2d Cir. 2000)); *accord Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001). "[T]he test is a flexible and discretionary one, and courts generally look at all four factors as a whole rather than focusing narrowly on any one of the criteria." *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 394 (S.D.N.Y. 2002) (citations omitted). As shown below, an analysis of each of the relevant factors compels the conclusion that the Bridger Parties are entitled to intervene as of right in this action.

### B.     The Motion is Timely.

In determining whether an intervention motion is timely, "courts should consider '(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of

---

[7] The cases cited by Eddystone in response to the Bridger Parties' pre-motion letter to the Court do not hold otherwise, and simply stand only for the proposition that a non-party to an arbitration may not *commence* a proceeding seeking to vacate award where none of the parties themselves have sought to confirm or vacate the award. *See* Letter from Filiberto Agusti to the Hon. William H. Pauley III dated March 7, 2017 [Docket No. 13] (citing *Meshkin v. Vertrue, Inc.*, Civil Action No. 3:07 CV 109 (CFD), 2007 U.S. Dist. LEXIS 63055 (D. Conn. Aug. 28, 2007; *Dundas Shipping & Trading Co. v. Stravelakis Bros., Ltd.*, 508 F. Supp. 1000, 1003 (S.D.N.Y. 1981); *Katir v. Columbia Univ.*, 821 F. Supp. 900, 901 (S.D.N.Y. 1993)). None of these cases involved a situation where a non-party to an arbitration sought to protect its interests by intervening in an otherwise properly commenced proceeding to confirm an award.

timeliness."' *In re Bank of New York Derivative Litig*., 320 F.3d 291, 300 (2d Cir. 2003) (quoting *United States v. Pitney Bowes, Inc*., 25 F.3d 66, 70 (2d Cir. 1994)).  "The determination of the timeliness of a motion to intervene is within the discretion of the district court, evaluated against the totality of the circumstances before the court."  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (internal quotation marks and citation omitted); *accord Aristocrat Leisure, Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009); *see also United Airlines, Inc. v. McDonald*, 432 U.S. 385, 390, 396 (1977) (motion seeking intervention was timely when filed 18 days after final judgment because it was made during the 30-day period for filing an appeal).

As described above, the Proposed Intervenors first learned that the Eddystone and JTS had apparently settled and that Eddystone intended to enforce the Alleged Arbitration Award against them when the Pennsylvania Action was commenced on February 2, 2017.  *See supra* at 4-5.  This proceeding was commenced on February 17, 2017, but Eddystone did not attempt to provide the Proposed Intervenors with notice of it.  *See supra* at 7.  After discovering the existence of this action as a result of their own diligence, the Bridger Parties notified Eddystone of their intent to intervene on February 20.  *Id*.  On February 28 – a mere 11 days after the commencement of this action and only 4 days after the Petition was served on Respondent JTS – the Bridger Parties filed a letter in this action seeking leave to file the present Motion.  *Id*.  The Officers filed their letter requesting leave to file this Motion that same week.  *Id*.  Counsel for each of the Proposed Intervenors appeared at the preliminary conference held in this action on April 13, 2017.  *Id*.  JTS – the respondent in this action – did not appear until April 25.  *Id*.  Given these facts Eddystone cannot credibly claim the Proposed Intervenors sat on their rights.

Eddystone has also not articulated any prejudice that it would suffer if intervention is allowed and confirmation of the Alleged Arbitration Award is delayed (assuming, *arguendo*, that

confirmation is ultimately granted), and the Proposed Intervenors are at a loss to imagine any such prejudice given Eddystone's stated intent to enforce any judgment entered in this action *only* against the Proposed Intervenors through the prosecution of the Pennsylvania Action, a case in its infancy. Even if the Alleged Arbitration Award is vacated, Eddystone would still try to prosecute its claims seeking damages arising out of the alleged breach of the RSA in the Pennsylvania Action, and would have to prove its contract case on the merits. But as discussed more fully below, the Proposed Intervenors stand to suffer significant prejudice if the Alleged Arbitration Award is confirmed because Eddystone would surely argue that the already-confirmed Alleged Arbitration Award could not subsequently be vacated by another court. This factors thus cuts strongly in favor of intervention.

### C. The Proposed Intervenors Have a Direct, Substantial and Legally Protectable Interest in this Action.

A party whose interest may be impaired by the result of a lawsuit possesses a "clear interest" in its outcome and ultimately satisfies the second factor for an intervention by right. *See Cole Mechanical Corp*., 2007 WL 2593000, at *4 (citing *United States ex rel. Foster Wheeler Corp. v. American Sur. Co*., 142 F.2d 726, 728 (2d Cir. 1944) and *Coleman Cap. Corp. v. Fid & Deposit Co*., 43 F.R.D. 407, 408 (S.D.N.Y. 1967)). "[F]or an interest to be cognizable under Rule 24(a)(2), it must be direct, substantial, and legally protectable." *Brennan*, 260 F.3d at 129 (internal quotation marks and citation omitted).[8]

Eddystone – while asserting in the Pennsylvania Action that the court should "disregard" Bridger Logistics' status as a separate entity from JTS and hold each of the Proposed Intervenors

---

[8] This court has noted that, where a case implicates a substantial public policy issue, the "interest" requirement of Rule 24(a) may be applied "less rigidly." *Tachiona*, 186 F. Supp. 2d at 395 (citations omitted). This action clearly implicates "the well-established and centuries-old policy against enforcement of judgments gained through collusive litigation." *Telenor Mobile Commc'ns AS v. Storm LLC*, 524 F. Supp. 2d 332, 358 (S.D.N.Y. 2007), *aff'd,* 584 F.3d 396 (2d Cir. 2009).

liable for JTS's debts – simultaneously takes the position that the Proposed Intervenors' interest in this action is "contingent," and therefore "does not suffice under Rule 24." *See* Letter from Filiberto Agusti to the Hon. William H. Pauley III dated March 7, 2017 [Docket No. 13]. This argument is nonsense.

The Second Circuit has repeatedly held that that a non-party has a sufficiently direct interest in an action for the purposes of Rule 24(a)(2) where that the action may adversely affect the non-party's interests in a other litigation. In *Oneida Indian Nation v. New York*, for example, the Second Circuit held that non-parties were entitled to intervene as of right where there was a "significant likelihood that the ultimate resolution of this litigation will lead to the conclusions of law on issues of first impression, or mixed findings of fact and law, which will implicate principles of *stare decisis*. . . which would control any subsequent lawsuit by the intervenors." 732 F.2d 261, 265-66 (2d Cir. 1984); *see also, e.g., New York Public Interest Research Group, Inc. v. Regents of University of N. Y.*, 516 F.2d 350 (2d Cir. 1975) ("the possible stare decisis effect of an adverse decision" provides a sufficient direct interest for the purposes of Fed. R. Civ. P. 24(a)(2)). Similarly, in *Sackman v. Liggett Group, Inc*., the district court held that intervenors had a direct interest in protecting alleged privileged communications that may be relevant in future lawsuits, because "the *stare decisis* effect of a court's decision is sufficient to demonstrate the requisite impairment of an interest to support a motion to intervene," and expressly rejected the argument that this interest was "too 'remote or contingent' to merit intervention." 167 F.R.D. 6, 21 (E.D.N.Y. 1996). The same principles apply here.

The Second Circuit's decision in *Brennan* is also instructive in demonstrating the Proposed Intervenors' interest in this action. In that case, white male employees sought to intervene in a discrimination action brought on behalf of a group of minority and women employees (the "Offerees") who stood to gain certain seniority benefits as a result of the action,

because such benefits "may result" in the Offerees displacing the intervenors at a later time, or "may" result in the intervenors failing to obtain certain desired transfers.  260 F.3d at 127.  The district court found this interest to be "remote and speculative" because, in order for the action to impact the interveners, "(i) one of the Offerees and one of the [intervenors] would have to request the same transfer; (ii) each would have to have the same job title; (iii) the performance ratings of the Offeree and the [intervenor] would have to be quite close; and (iv) the Offeree and the appellant would have to hold the first and second spots, respectively, on the transfer list . . . ." *Id.* at 128.  The Second Circuit disagreed, and held that "the effects of a loss of relative seniority rights should not be regarded as too speculative and remote to justify intervention, save, perhaps, in a case where a concrete effect on an employee is impossible" because the exercise of seniority rights "has a domino effect" that may impact the intervenors.  *Id.* at 132.

The interest of the Proposed Intervenors in this case is far more direct than that of the parties permitted to intervene in *Brennan, Oneida Indian Nation, New York Public Interest Research Group, Inc.* and *Sackman*.  Indeed, the Proposed Intervenors are defendants in a pending action where they are entitled to raise defenses based on the validity of an Alleged Arbitration Award that they believe should be vacated.  But as a practical matter, confirmation of the Alleged Arbitration Award by this court may vitiate those defenses without the Proposed Intervenors ever being afforded an opportunity to challenge the validity of the Alleged Arbitration Award.  Indeed, if the Alleged Arbitration Award is confirmed against JTS, it may have "the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered."  9 U.S.C. §13.  And at that stage, Eddystone will argue that (a) the Eastern District of Pennsylvania has no power to vacate or modify the already-confirmed Alleged Arbitration Award, even if (as here) strong grounds for vacatur and/or modification exist

under the Federal Arbitration Act; and (b) the Proposed Intervenors should be bound by the this

Court's judgment under the doctrines of issue or claim preclusion, even though no adjudication

of the merits occurred.  The Proposed Intervenors thus have a direct and cognizable interest in

this action.[9]

### D.      Disposing of This Action Would Impair the Proposed Intervenors' Ability to Protect Their Interests.

The "impairment" prong of Rule 24(a)(2) requires the movant to show that it "is so

situated that without intervention the disposition of the action may, as a practical matter, impair

or impede its ability to protect its interest."  *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70

(2d Cir. 1994).  An intervenor has a recognizable interest that may be impaired by an action

where its liability will be determined in the proceeding, or where a judgment may bind or have a

preclusive effect against the intervenor or subject him to inconsistent rulings in separate

proceedings.  *S&S Kings Corp. v. Westchester Fire Ins. Co.*, No. 16-CV-2016 (RA), 2017 WL

396741, at *2 (S.D.N.Y. Jan. 27, 2017); *see also* 7C Charles Alan Wright, Arthur R. Miller &

Edward H. Cooper, Federal Practice and Procedure § 1908.1 (3d ed. 1998); *Association of*

*Contracting Plumbers*, 841 F.2d at 467 (party that would functionally be bound by entry of an

allegedly collusive arbitration award had right to intervene in arbitration award enforcement

---

[9] The cases cited by Eddystone to support its argument the Proposed Intervenors' interest is "contingent" are plainly distinguishable.  In *Washington Electric Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, the Second Circuit held that proposed intervenors did to have a sufficiently direct interest in an action where "[d]isposition of the instant proceeding without the participation of [proposed intervenors]. . . will not operate to bar under the doctrines of *res judicata* or collateral estoppel" in future actions and where "the doctrine of *stare decisis* also will not control future, related actions by" the proposed intervenors. 922 F.2d 92, 98 (2d Cir. 1990).  Here, Eddystone obviously intends to bind the Proposed Intervenors in the Pennsylvania Action under the doctrines of *res judicata* or collateral estoppel, and confirmation of the Alleged Arbitration Award by this Court may be irreversible.  In *Katz* and *Compagnie Noga d'Imp. et d'Exp. S.A.*, the proposed intervenors were parties who merely had unrelated claims against one of the litigants, and the only interest they claimed was a remote interests in the money judgments which may be awarded.  *Katz v. Berisford Int'l PLC*, 96 Civ. 8695 (JGK), 2000 U.S. Dist. LEXIS 17314, at *14 (S.D.N.Y. Nov. 17, 2000) (proposed intervenor's interest was "[t]he possibility that a party will establish an interest in a judgment through a pending lawsuit"; *see also Compagnie Noga d'Imp. et d'Exp. S.A. v. Russian Fed'n*, 2005 U.S. Dist. LEXIS 14432, at *14 (S.D.N.Y. July 20, 2005) (proposed intervenor "moves to intervene not to advance the

action and move to set aside award); *Grumman Flxible Corp. v. Dole*, 102 F.R.D. 36, 39 (D.D.C. 1983) (party that could be bound in separate legal proceeding by entry of award in present case had right to intervene).

Here, if the Alleged Arbitration Award is confirmed, it may have the same preclusive effect as an adjudication on the merits by this Court.  In addition, if the Alleged Arbitration Award is confirmed at least a possibility exists that the Eastern District of Pennsylvania would consider the Alleged Arbitration Award binding on the Proposed Intervenors as to the issue of JTS's liability to Eddystone, and the amount thereof, even though the Proposed Intervenors did not participate in the arbitration.  Indeed, given Eddystone's stated intent to enforce the Alleged Arbitration Award against *only* the Proposed Intervenors and *not* JTS, it appears that Eddystone's principal justification for seeking confirmation of the Alleged Arbitration Award is <u>precisely</u> to "as a practical matter, impair or impede [the Proposed Intervenors'] ability to protect [their] interest" in the Pennsylvania Action.  The Proposed Intervenors would oppose Eddystone's attempt to impose liability on them through the Alleged Arbitration Award,[10] but it is impossible to predict how the Eastern District of Pennsylvania would rule.  This clearly satisfies the "impairment" prong of Rule 24(a)(2).

---

underlying litigation but to raise a new issue concerning how much of any recovery [plaintiff] must allocate to [proposed intervenor].").

[10] Clearly, no actual adjudication on the merits has occurred.  Further, having failed to try to join any of the Proposed Intervenors in the arbitration, fundamental fairness dictates that Eddystone should not be allowed to bind the Proposed Intervenors' by the Alleged Arbitration Award.  *C.f.* Restatement (Second) of Judgments § 28 ("Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded" if there "is a clear and convincing need for a new determination of the issue. . . because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.").

**E.      The Existing Parties Do Not Adequately Represent the Proposed Intervenors'
         Interests.**

Finally, the Proposed Intervenors are entitled to intervention as of right because their

interest in this case will not be adequately represented by the existing parties.  In general, a

movant's required showing under the "adequacy of representation" prong "should be treated as

minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (prong is

satisfied "if the applicant shows that representation of his interest 'may be' inadequate"); *see also

Brooks v. Sussex County State Bank*, 167 F.R.D. 347, 352 (N.D.N.Y. 1996) ("[T]he burden upon

the movant is only to show that the representation 'may be' inadequate.").  Here, the Proposed

Intervenors' interests are diametrically opposed to those of Eddystone, which seeks confirmation

of the Arbitration Award, and to those of JTS, which "does not oppose" confirmation of the

Alleged Arbitration Award because it is a party to the collusive Settlement Agreement pursuant

to which it consented to confirmation of the Alleged Arbitration Award.  Given these facts, the

Proposed Intervenors should be permitted intervene as of right.

**F.      The Proposed Intervenors Have Meritorious Defenses to Confirmation of the
         Alleged Arbitration Award.**

In ruling on intervention, the ultimate merits of the Proposed Intervenors claims and

defenses is not before the Court, but the Court must accept the allegations of the Proposed

Intervenors as true if they are not "frivolous on their face."   *Brennan*, 260 F.3d at 129-130;

*Oneida Indian Nation*, 732 F.2d at 265.  Indeed, the Second Circuit has held that "[a]n interest

that is otherwise sufficient under Rule 24(a)(2) does not become insufficient because the court

deems the claim to be legally or factually weak." *Brennan*, 260 F.3d at 130.  As described more

fully in the Proposed Intervenors' *Answer to the Petition and Cross-Petition to Vacate*, the

Proposed Intervenors have numerous meritorious grounds upon which to challenge confirmation

and seek vacatur of the Alleged Arbitration Award.  *See* Zensky Declaration Ex. G.

16

## II.    IN THE ALTERNATIVE, THE PROPOSED INTERVENORS SHOULD BE GRANTED PERMISSIVE INTERVENTION

For many of the foregoing reasons, permissive intervention is also warranted in this case. Rule 24(b)(1) states that "[u]pon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . .  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

It is well-settled that, in interpreting Rule 24(b), the words "claim or defense" should be read in a broad manner and not in a technical sense, s*ee Brooks v. Flagg Bros., Inc.*, 63 F.R.D. 409, 413 (S.D.N.Y. 1974), and that a district court has broad discretion to determine whether intervention is appropriate under Rule 24(b).  *See Rosenshein v. Kleban*, 918 F. Supp. 98, 106 (S.D.N.Y. 1996); *Sackman v. Liggett Group, Inc.*, 167 F.R.D. 6, 22 (E.D.N.Y. 1996); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 59 (S.D.N.Y. 1993).  The court may consider a range of factors, including "'the nature and extent of the intervenors' interests,' and to what, if any, degree those interests are 'adequately represented by other parties,' as well as 'whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Int'l Design Concepts, LLC v. Saks Inc*. 486 F. Supp. 2d 229, 235 (S.D.N.Y. 2007) (quoting *H.L. Hayden Co. of N. Y., Inc. v. Siemens Med. Sys., Inc*., 797 F.2d 85, 89 (2d Cir.1986)).  However, "the principal guide in deciding whether to grant permissive intervention" is whether intervention will cause undue delay or prejudice the original parties. *Pitney Bowes, Inc.*, 25 F.3d at 73; *see* Fed. R. Civ. P. 24(b)(3).

As shown above, all of these factors cut in favor of intervention in this case.  *See supra* at 8-15.  Moreover, absent intervention, this Court would be placed in the perverse position of having to adjudicate an unopposed petition to confirm, based on a collusive settlement agreement

between the existing parties, in contravention of the "the well-established and centuries-old policy against enforcement of judgments gained through collusive litigation." *Telenor Mobile Commc'ns AS v. Storm LLC*, 524 F. Supp. 2d 332, 358 (S.D.N.Y. 2007). Accordingly, if the Court determines that intervention as of right is not appropriate under Rule 24(a), the Proposed Intervenors should, at minimum, be permitted to intervene under Rule 24(b)(1).

## CONCLUSION

For the foregoing reasons, the Proposed Intervenors' motion to intervene as a defendant in this litigation should be granted.

Dated:  New York, New York
        May 9, 2017

                                    Respectfully submitted,
                                    AKIN GUMP STRAUSS HAUER & FELD LLP


                            By:     */s/ David M. Zensky*_____
                                    David M. Zensky
                                    Sunish Gulati
                                    Katherine Porter
                                    One Bryant Park
                                    New York, New York 10036
                                    Telephone:  (212) 872-1000
                                    Facsimile:   (212) 872-1002
                                    dzensky@akingump.com
                                    sgulati@akingump.com
                                    kporter@akingump.com
                                    *Attorneys for Proposed Intervenors Bridger*
                                    *Logistics, LLC, Ferrellgas Partners, L.P.,*
                                    *and Ferrellgas L.P.*


                                    Jeremy A. Fielding (*pro hac vice* pending*)*
                                    Kent D. Krabill (*pro hac vice* pending)
                                    Jonathan D. Kelley (*pro hac vice* pending)
                                    LYNN PINKER COX & HURST, LLP
                                    2100 Ross Avenue, Suite 2700
                                    Dallas, Texas 75201
                                    Telephone: (214) 981-3800
                                    Facsimile: (214) 981-3839
                                    jfielding@lynnllp.com
                                    kkrabill@lynnllp.com
                                    kelley@lynnllp.com

                                    *Attorneys for Proposed Intervenors*
                                    *Julio Rios and Jeremy Gamboa*

19