# Exhibit G

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC,<br><br>Petitioner,<br><br>vs.<br><br>JAMEX TRANSFER SERVICES, LLC,<br><br>Respondent,<br><br>and<br><br>BRIDGER LOGISTICS, LLC, FERRELLGAS PARTNERS, L.P., FERRELLGAS, L.P., JULIO RIOS and JEREMY GAMBOA<br><br>Respondent-Intervenors. | Case No: 1:17-cv-01266-WHP |

**THE INTERVENORS' ANSWER AND CROSS-PETITION TO
VACATE AND/OR MODIFY ARBITRATION AWARD**

Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P. (the "Bridger Parties") and Julio Rios and Jeremy Gamboa (the "Officers," together with the Bridger Parties, the "Intervenors") hereby submit this Answer to Petitioner Eddystone Rail Company, LLC's ("Eddystone's") Petition to Confirm Arbitration Award (the "Petition") [Dkt. No. 1], and Cross-Petition to Vacate and/or Modify the Arbitration Award rendered against Respondent Jamex Transfer Services, LLC ("JTS") on January 24, 2017, in the arbitration *Eddystone Rail Services, LLC v. Jamex Transfer Services, LLC*, administered by the Society of Maritime, Arbitrators, Inc. (the "Alleged Arbitration Award"), and state as follows:

**Answer to Petition**

1.  Upon information and belief, the Intervenors admit the allegations set forth in paragraph 1 of the Petition.

1

2. Upon information and belief, the Intervenors admit the allegations set forth in paragraph 2 of the Petition.

3. The Intervenors admit that the Alleged Arbitration Award purports to resolve claims under a maritime contract concerning Eddystone's providing the service of transloading oil from railcars delivered to Eddystone's facility on the Delaware River onto vessels at the facility's dock for subsequent shipment to refineries downriver, and state that the remaining allegations in paragraph 3 of the Petition are conclusions of law to which no response is required.

4. Paragraph 4 of the Petition contains conclusions of law to which no response is required. To the extent a response is required, the Intervenors deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 4 of the Petition.

5. Paragraph 5 of the Petition contains conclusions of law to which no response is required. To the extent a response is required, the Intervenors deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 5 of the Petition.

6. The Intervenors admit that Eddystone and Bridger Transfer Services, LLC (now named JTS) entered into the Eddystone Rail Facilities Services Agreement (the "RSA") on February 13, 2013, state that the terms of the RSA speak for themselves, and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 6 of the Petition.

7. The Intervenors admit that Section 16(b) of the RSA contains an arbitration clause and state that the terms of the arbitration clause speak for themselves.

8. The Intervenors admit that Eddystone submitted an arbitration demand dated April 19, 2016, and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 8 of the Petition.

9. The Intervenors deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 9 of the Petition.

10. The Intervenors deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 10 of the Petition.

**Affirmative Defenses and Cross-Petition to Vacate
and/or Modify the Alleged Arbitration Award**

11. In April 2016, Eddystone commenced an arbitration against JTS seeking $3.87 million in damages arising out of JTS's alleged failure to make certain required payment under the RSA. Eddystone eventually also sought damages for approximately $135 million in future deficiency payments that it alleged would be owed under the RSA through June 2019.

12. The arbitration clause in the RSA in the makes clear that "the arbitrators shall have no authority, power or right to alter, change, amend, modify, supplement or subtract from the terms of the [RSA]," including pursuant to any side agreements with terms that are different from the RSA. RSA ¶ 16.

13. JTS submitted a statement of defenses and counterclaims in June 2016 in which it denied any liability, asserted numerous defenses to Eddystone's claims, and lodged counterclaims against Eddystone for fraud, fraudulent inducement, negligent misrepresentation, and breach of contract.

14. In July 2016, JTS filed a supplement to its counterclaims in which it alleged that it suffered specific damages in excess of $11 million due to Eddystone's conduct.

15. JTS's defenses and counterclaims were meritorious and had a substantial chance of succeeding in an adversarial adjudication.

16. Eddystone contends that by January 2017 it became clear that JTS had no assets. Eddystone also contends that, on January 5, 2017, Eddystone and JTS (collectively, the

3

"Parties"), and the entities that control JTS, entered into a settlement agreement (the "Settlement Agreement") pursuant to which JTS stipulated to its liability and to $139,050,406.77 in damages.

17. Pursuant to the Settlement, the Parties stipulated to damages that include the total amount of damages Eddystone could seek for anticipatory breach of the RSA, without applying any discount to account for the present value of the future payments under the RSA, and without accounting for the avoided costs of litigation.  The stipulated amount of damages was a capitulation by JTS and not a reasonable reflection of JTS's exposure in the arbitration.

18. Eddystone has admitted that it "obviously [wasn't] looking for a recovery against" JTS at the time the Parties entered into the Settlement Agreement.  Upon information and belief, Eddystone also does not seek to hold the entities that own and control JTS, and that owned and controlled JTS as the time of the alleged breach, liable for JTS's debts.  Instead, the Parties intended to shift JTS's liability under the Settlement Agreement onto the Intervenors.

19. As requested by the parties pursuant to their Settlement Agreement, on January 24, 2017 the arbitrators issued the Alleged Arbitration Award awarding Eddystone the amount agreed upon in the Settlement Agreement.  Both Eddystone and JTS consented to and signed the Alleged Arbitration Award, and Eddystone – with JTS's consent – now seeks an order confirming the Alleged Arbitration Award.  The Alleged Arbitration Award was a settlement award and not the result not of an adjudication of the merits.

20. Eddystone never attempted to serve any of the Proposed Intervenors with a demand for arbitration, and did not disclose that it intended to enforce any award issued by the arbitrators against the Proposed Intervenors until after the Alleged Arbitration Award was issued.

**Grounds for Vacatur and/or Modification**

21. The Alleged Arbitration Award should be vacated and/or otherwise not confirmed to the extent that the panel manifestly disregarded the law applicable to the dispute, including because the arbitrators did not apply any law, and instead simply approved the Settlement Agreement without adjudicating the merits of the Parties' claims, counterclaims and defenses.

22. The Alleged Arbitration Award should be vacated and/or otherwise not confirmed pursuant to 9 U.S.C. § 10(a)(1) because it was procured by corruption, fraud, or undue means, including because it constituted a collusive attempt to shift liability onto nonparties to the arbitration. The corruption fraud or undue means used by the Parties to procure the Alleged Arbitration Award include:

   a. The Parties' failure to serve any arbitration demand on the Intervenors;

   b. The Parties' failure to disclose that Eddystone intended to enforce the award issued by the arbitrators against the Intervenors until after the Alleged Arbitration Award was issued;

   c. The procurement of the Alleged Arbitration Award based on a confidential Settlement Agreement and not an adjudication of the merits;

   d. The Parties' entry into the Settlement Agreement at a time when Eddystone believed JTS had little or no assets;

   e. JTS's capitulation to Eddystone's arbitration demands and release of meritorious defenses and counterclaims for no reduction in Eddystone's alleged damages;

   f. JTS's stipulation to liability in an amount that was not a reasonable reflection of JTS's exposure in the arbitration; and

5

  g. Upon information and belief, Eddystone's release or waiver of claims against other parties to the Settlement Agreement that own and/or control JTS.

  23. The Alleged Arbitration Award should be vacated and/or otherwise not confirmed pursuant to 9 U.S.C. § 10(a)(4) because the arbitrators exceeded their powers by applying the terms of the Settlement Agreement instead of or in addition to the terms of the RSA pursuant to which the arbitrators derived their authority, even though the RSA provided that "the arbitrators shall have no authority, power or right to alter, change, amend, modify, supplement or subtract from the terms of the [RSA]."

  24. The Alleged Arbitration Award should be modified or corrected pursuant to 9 U.S.C. § 11(a) to the extent the arbitrators determined the amount of damages based on the Settlement Agreement and failed to calculate damages under the RSA.

  25. The Alleged Arbitration Award should be modified or corrected pursuant to 9 U.S.C. § 11(b) to the extent awarded upon matters relating to the Settlement Agreement in lieu of or in addition to the matters submitted to them pursuant to the RSA.

## RESERVATION OF RIGHTS

  This *Answer and Cross-Petition to Vacate or Modify Arbitration Award* is based upon the Intervenors' current knowledge of the facts and circumstances relating to the Alleged Arbitration Award. The Intervenors reserve the right to amend this *Answer and Cross-Petition to Vacate or Modify Arbitration Award*, and to assert additional defenses to confirmation of the Alleged Arbitration Award and/or additional grounds for vacatur or modification of the Alleged Arbitration Award upon discovery of further information.

## DEMAND FOR RELIEF

  WHEREFORE, the Intervenors respectfully request that:

1. This Court enter an order vacating the Alleged Arbitration Award; or, in the alternative,

2. Modifying or correcting the Alleged Arbitration Award pursuant to 9 U.S.C. § 11; and

3. Granting such further relief as may be just and necessary under the circumstances.

Dated: New York, New York
May 9, 2017

Respectfully submitted,
AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/ David M. Zensky
David M. Zensky
Sunish Gulati
Katherine Porter
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
dzensky@akingump.com
sgulati@akingump.com
kporter@akingump.com
*Attorneys for Proposed Intervenors Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P.*

Jeremy A. Fielding (*pro hac vice* pending)
Kent D. Krabill (*pro hac vice* pending)
Jonathan D. Kelley (*pro hac vice* pending)
LYNN PINKER COX & HURST, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839
jfielding@lynnllp.com
kkrabill@lynnllp.com
jkelley@lynnllp.com

*Attorneys for Proposed Intervenors Julio Rios and Jeremy Gamboa*