**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **EDDYSTONE RAIL COMPANY, LLC** | ) | |
| | ) | |
| **Petitioner,** | ) | **Civil No. 17-cv-01266 (WHP)** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **JAMEX TRANSFER SERVICES, LLC,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**PETITIONER EDDYSTONE RAIL COMPANY, LLC'S OPPOSITION TO THE
BRIDGER PARTIES' AND FERRELLGAS OFFICERS' MOTION TO INTERVENE**

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................4

    A.    The Contract at Issue .................................................................................4

    B.    The Arbitration.........................................................................................5

    C.    Settlement & Arbitral Award.....................................................................7

ARGUMENT ........................................................................................................................8

I.    THE PROPOSED INTERVENORS ARE NOT ENTITLED TO OPPOSE
CONFIRMATION OF THE AWARD .............................................................................8

    A.    A Non-Party to an Arbitration Cannot Intervene to Block Confirmation of
an Arbitral Award ....................................................................................8

    B.    Proposed Intervenors May Not Seek Relief Different From That
Requested by the Existing Parties to the Litigation ...................................12

    C.    Under Any of the Positions Advanced in *Laroe Estates*, Proposed
Intervenors Lack Standing to Seek Vacatur of the Award ..........................14

II.    PROPOSED INTERVENORS CANNOT SATISFY THE REQUIREMENTS OF
RULE 24 .................................................................................................................16

    A.    Proposed Intervenors Lack the "Direct, Substantial, and Legally
Protectable Interest" Required Under Rule 24(a)(2) .............................17

        1.    A "Direct" Interest Cannot Be Contingent on Collateral Litigation..........17

        2.    Proposed Intervenors Have No "Stare Decisis Interest"..........................20

        3.    Proposed Intervenors' Attempt to Intervene After the Settlement is
Untimely ........................................................................................21

    B.    There Is No Basis for Permissive Intervention ....................................24

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of Contracting Plumbers of City of N.Y. v. Local Union No. 2 United Ass'n
    of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. &
    Can.*,
    841 F.2d 461 (2d Cir. 1988)............................................................................................ *passim*

*Bacashihua v. U.S. Postal Serv.*,
    859 F.2d 402 (6th Cir. 1988) ...........................................................................................10

*Brennan v. New York City Board of Education*,
    260 F.3d 123 (2d Cir. 2001)............................................................................................21

*Catanzano v. Wing*,
    103 F.3d 223 (2d Cir. 1996).............................................................................................22

*Compagnie Noga D'Importation et D'Exportation S.A. v. Russian Federation*,
    No. 00 Civ. 0632WHP, 2005 WL 1690537 (S.D.N.Y. July 20, 2005).................17, 19, 24, 25

*Covanta Onondaga Ltd. v. Onondaga Cnty. Res. Recovery Agency*,
    318 F.3d 392 (2d Cir. 2003).............................................................................................17

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) .........................................................................................................15

*Donaldson v. United States*,
    400 U.S. 517 (1971).........................................................................................................18

*Dundas Shipping & Trading Co. v. Stravelakis Bros.*,
    508 F. Supp. 1000 (S.D.N.Y. 1981)....................................................................................9

*Dupree v. Nat'l Ass'n of Letter Carriers*,
    No. 12-CV-576-JPG-DGW, 2013 WL 2597511 (S.D. Ill. June 11, 2013)............................10

*Eddystone Rail Co. v. Ferrellgas Partners*,
    1:16-mc-00295-P1 (S.D.N.Y.)...................................................................................6, 7, 22

*Eddystone Rail Company v. Bridger Logistics*,
    2:17-cv-00495-RK (E.D. Pa.) ........................................................................................5, 8

*Florasynth v. Pickholz,*
 750 F.2d 171 (2d Cir. 1984)............................................................................................13, 25

*Friends of Earth v. Laidlaw Envtl. Services (TOC),*
 528 U.S. 167 (2000).................................................................................................................15

*GemCap Lending I, LLC v. Taylor,*
 No. 15-55332, 2017 WL 603859 (9th Cir. Feb. 15, 2017) ...............................................21, 22

*Grumman Flxible Corp. v. Dole,*
 102 F.R.D. 36 (D.D.C. 1983)...................................................................................................20

*In re Holocaust Victim Assets Litig.,*
 225 F.3d 191 (2d Cir. 2000).....................................................................................................21

*Katir v. Columbia Univ.,*
 821 F. Supp. 900 (S.D.N.Y. 1993), *aff'd* 15 F.3d 23 (2d Cir. 1994)...................................9, 12

*Katz v. Berisford Int'l PLC,*
 No. 96 CIV. 8695(JGK), 2000 WL 1760965 (S.D.N.Y. Nov. 30, 2000) ................................19

*Korwek v. Hunt,*
 827 F.2d 874 (2d Cir. 1987).....................................................................................................13

*Laroe Estates v. Town of Chester,*
 828 F.3d 60 (2d Cir. 2016), *cert. granted,* 137 S. Ct. 810 (2017) ...........................................12

*Local 13, Int'l Longshoremen's & Warehousemen's Union v. Pac. Mar. Ass'n,*
 441 F.2d 1061 (9th Cir. 1971) ...................................................................................................9

*Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel,*
 145 F.3d 85 (2d Cir. 1998).......................................................................................................13

*Meshkin v. Vertrue,*
 No. 3:07CV109(CFD), 2007 WL 2462172 (D. Conn. Aug. 28, 2007) ........................9, 10, 12

*Nat'l Envtl. Servs. Corp. v. Ins. Co. of State of Pa.,*
 No. 4:06CV240-DJS, 2007 WL 3330215 (E.D. Mo. Nov. 6, 2007) .......................................10

*New York Public Interest Research Group v. Regents of University of State of
 New York,*
 516 F.2d 350 (2d Cir. 1975).....................................................................................................20

*Oneida Indian Nation v. New York,*
 732 F.2d 261 (2d Cir. 1984).....................................................................................................20

*Orion Shipping & Trading Co. v. E. States Petrol. Corp. of Pan., S. A.,*
 312 F.2d 299 (2d Cir. 1963).....................................................................................................25

*Primex Plastics Corp. v. TriEnda LLC*,
    No. 13-CIV-321, 2013 WL 1335633 (S.D.N.Y. Apr. 3, 2013) ..............................................24

*Restor-A-Dent Dental Labs. v. Certified Alloy Prods.*,
    725 F.2d 871 (2d Cir. 1984)...............................................................................17, 18, 21

*Rocky Mountain Biologicals, Inc. v. Microbix Biosystems, Inc.*,
    986 F. Supp. 2d 1187 (D. Mont. 2013)...................................................................................9

*S&S Kings Corp. v. Westchester Fire Ins. Co.*,
    No. 16-CV-2016 (RA), 2017 WL 396741 (S.D.N.Y. Jan. 27, 2017) ..............................19, 20

*Sackman v. Liggett Group*,
    167 F.R.D. 6 (E.D.N.Y. 1996)...........................................................................................21

*Schwabenbauer v. Bd. of Educ. of City Sch. Dist. of City of Olean*,
    777 F.2d 837 (2d Cir. 1985)...............................................................................................13

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998)..............................................................................................................15

*Tachiona ex rel. Tachiona v. Mugabe*,
    186 F. Supp. 2d 383 (S.D.N.Y. 2002)................................................................................17

*Techcapital Corp. v. Amoco Corp.*,
    No. 99 CIV. 5093 (AGS), 2001 WL 267010 (S.D.N.Y. Mar. 19, 2001)..............................24

*Town of Chester, N.Y. v. Laroe Estates*,
    No. 16-605 (U.S. argued Apr. 17, 2017) ..................................................................... *passim*

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972)............................................................................................................13

*In re Tutu Water Wells CERCLA Litig.*,
    326 F.3d 201 (3d Cir. 2003)...............................................................................................18

*United Airlines, Inc. v. McDonald*,
    432 U.S. 385 (1977)............................................................................................................22

*Wash. Elec. Coop. v. Mass. Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990)..............................................................................13, 17, 18, 25

**Statutes**

9 U.S.C. § 9 .....................................................................................................................8, 24

9 U.S.C. § 10 .........................................................................................................3, 11, 15, 24

9 U.S.C. § 11 ...........................................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 24(b) ........................................................................................................ *passim*

**INTRODUCTION**

In this action to confirm an arbitration award, Eddystone Rail Company ("Eddystone" or "ERC") seeks to conclude its dispute and exhaust its remedies against Jamex Transfer Services, LLC ("JTS").  Eddystone entered into a Rail Facilities Services Agreement (the "RSA") with JTS whereby Eddystone transloaded crude oil from trains JTS brought to marine vessels on the Delaware River near Philadelphia.  That Agreement contained an arbitration clause, and when JTS stopped making payments due under the contract, Eddystone commenced an arbitration. After eight months of discovery and hearings, they then settled that dispute in accordance with the governing arbitral rules, and the arbitral panel exercised its express authority to issue an award upon settlement.

Eddystone does not seek a ruling from this Court that the award binds any party other than JTS.  And Eddystone does not seek a ruling on the extent to which the judgment collaterally estops Proposed Intervenors in Eddystone's suit against them in the Eastern District of Pennsylvania.  Any such questions would be for that Court to resolve, based on whatever arguments and evidence the parties place before it.  Here, Eddystone seeks a simple confirmation of a settlement award under the Federal Arbitration Act ("FAA") against JTS that will terminate its litigation against JTS.  The parties to that dispute have reached a satisfactory resolution.  They are entitled to finality, and Proposed Intervenors have no standing to interfere with it.

Proposed Intervenors are the former parents and control persons of JTS.  In January 2016, unbeknownst to Eddystone, they stripped JTS of assets and sold it for $10 to its current owners as part of a scheme to deprive Eddystone of the payments to which Eddystone was entitled under the RSA.  After the sale, JTS abruptly stopped bringing trains to Eddystone's facility and making payments under the RSA.  Eddystone filed for arbitration before the Society of Maritime Arbitrators ("SMA"), as required under the RSA.

Proposed Intervenors were aware of the arbitration.  They had kept JTS's documents despite the sale, which caused JTS's new owners to contact them for assistance and required Eddystone to serve them with a subpoena.  Proposed Intervenors knew that JTS had minimal assets when they transferred it in January 2016.  And Proposed Intervenors anticipated that Eddystone would seek relief from them once it exhausted its remedies against JTS.  Opposing enforcement of the subpoena in this Court in July 2016, Proposed Intervenors told Judge Caproni that it "is plainly an effort by [Eddystone] to obtain discovery from non-party [Ferrellgas] to build a separate lawsuit against [Ferrellgas]."  Yet, they made no attempt to intervene or participate in the arbitration, seeking to benefit if JTS won while preserving the opportunity to deny that they are bound by an award in the event of a JTS loss.

Now that Eddystone and JTS have settled in accordance with the SMA Rules, however, Proposed Intervenors seek to vacate the award.  This would return Eddystone and JTS back to an arbitration they have already settled, reversing consideration exchanged, apparently with no alternative but to litigate the arbitration to conclusion.  There is no precedent for such a result.

Proposed Intervenors try to justify this by pointing to the hypothetical preclusive effect of the confirmed award in litigation Eddystone has filed against them in the Eastern District of Pennsylvania.  But they argue at the same time that there is no such preclusive effect.  Nothing will prevent the Proposed Intervenors from raising every point they raise here in the Eastern District of Pennsylvania should Eddystone seek to "enforce" the judgment there.  Indeed, the law is clear that whether a court's findings in a judgment have a preclusive effect only becomes ripe for determination if and when a party uses the findings and conclusions in another court.

A party may not intervene in the confirmation of an arbitration award when it was not a party to the arbitration and has only a contingent interest in its outcome.  In addition, the FAA

expressly provides that an arbitration award cannot be vacated unless a party to the arbitration requests this relief.  9 U.S.C. § 10.  A single Second Circuit case found, in a matter where the issue was not contested by the litigants, that a non-party could nonetheless intervene where it had been unaware of the arbitration and the judgment immediately affected its rights.  And it is otherwise well settled that a proposed intervenor must have a non-contingent interest in the litigation to intervene.  Here, Proposed Intervenors themselves argue that their liability is contingent on the outcome of the Eastern District of Pennsylvania litigation.  Intervention is never permissible where the proposed intervenors' interest in the case depends on the hypothetical results of other litigation.

Moreover, Proposed Intervenors ask to do what the Supreme Court and Second Circuit have forbidden – intervene to seek vacatur, relief that no existing party has requested.  In what is otherwise an unopposed action to confirm, Proposed Intervenors ask the court to vacate the award.  For similar reasons, permissive intervention should be denied.  Because the petition to confirm and cross-petition to vacate present entirely distinct issues, there is no "common question of law or fact" to adjudicate.

The pending Supreme Court decision identified by the Court at the April 13 hearing, *Town of Chester, N.Y. v. Laroe Estates, Inc*., will, if anything, make it even clearer that Proposed Intervenors cannot intervene.  The question presented in that case is whether intervention is allowed for someone who lacks Article III standing.  If the Supreme Court holds that constitutional standing is necessary, then intervention will be barred here for yet another reason, that Proposed Intervenors lack the requisite "injury in fact."  And if the Court does not so hold, Proposed Intervenors still cannot overcome a proposition that they lack independent standing yet seek independent relief.  Everyone in *Laroe* – petitioner, respondent, the United States as amicus,

and the Justices themselves – appears to agree that an intervenor without its own standing must assert the same legal theories and seek the same relief as the existing parties.

In short, Proposed Intervenors' motion to intervene should be denied.

## BACKGROUND

### A.   The Contract at Issue

Proposed intervenors Julio Rios and Jeremy Gamboa ran a crude oil logistics business under the name "Bridger," in which they shipped crude oil from North Dakota and sold it to a refinery on the Delaware River.  One of their companies, proposed intervenor Bridger Logistics, transported the crude oil from North Dakota to the Philadelphia-area refinery.

Because Bridger's principal refinery customer in Philadelphia could accept crude only from marine vessels, Bridger required a facility on the Delaware River to transfer the crude oil from railcars to barges for transport to the refinery.  Accordingly, Proposed Intervenors induced Eddystone to construct and operate such a transloading facility.  They caused Jamex Transfer Services ("JTS") – at the time named Bridger Transfer Services and a subsidiary of Bridger Logistics – to enter into a "take or pay" contract (the RSA) with Eddystone.  Dkt. 5-2.  To underwrite the cost of Eddystone constructing the facility, JTS agreed to bring 65,000 barrels of crude oil a day to Eddystone for five years or pay a minimum volume commitment charge on any shortfalls.  *Id.* at 6.  The RSA included an arbitration clause negotiated and agreed to by Rios and Gamboa, the former CEO and COO, respectively, of Bridger Logistics.

Proposed Intervenors held JTS out as a bona fide independent company.  According to audited financials provided to Eddystone, as of January 1, 2015, JTS had almost $100 million in assets, including nearly $40 million of net worth.  Theodore Decl. Ex. 1 at 20 (Bridger, LLC Audited Financial Statements, Apr. 15, 2015).  However, it now appears that JTS was a mere

front for Bridger Logistics.  JTS made the transloading capacity it purchased from Eddystone in return for a five-year minimum volume guarantee freely available to Rios and Gamboa's other companies without obtaining any of the profit from their crude oil transportation scheme.

As long as they continued to ship crude oil from North Dakota to the refinery on the Delaware River, Proposed Intervenors made sure to cover the monthly amounts owed under the RSA.  But when changing crude oil prices caused them to stop shipping crude oil, they decided to abandon JTS and the obligations to Eddystone.  Unbeknownst to Eddystone, on January 13, 2016, Proposed Intervenors transferred JTS to a newly-formed shell entity named Jamex Transfer Holdings, LLC, in an agreement stating that JTS had "no assets other than the [RSA]" and certain other contracts.  *Eddystone Rail Company v. Bridger Logistics*, No. 2:17-cv-00495-RK (E.D. Pa.), ECF No. 35-5 § 4.11.  At the same time, Bridger Logistics terminated payments that it had been making to JTS to cover the amounts due under the RSA and purported to transfer the obligation to cover those amounts to JTS's new, insolvent parent company.  *Id.*, ECF No. 35-5 at 16–17; Theodore Decl. Ex. 2 at 14:11–15 (Tr. of Apr. 13, 2017 Hr'g).  Without assets and without cash flow, JTS immediately stopped bringing trains to the Eddystone facility and made no minimum volume commitment payments.

### B.    The Arbitration

Under the RSA, Eddystone and JTS conducted mandatory arbitration before the SMA in New York City.  Eddystone filed for arbitration against JTS on April 19, 2016.  The parties proceeded with initial discovery, and Eddystone put on its case-in-chief on June 29, 2016.  There was a recess to conduct additional discovery before JTS's defense case and Eddystone's rebuttal case, ultimately scheduled for February 2017.

Proposed Intervenors were aware of the arbitration from early on.  At the June 29, 2016 hearing, counsel for JTS noted that JTS's documents had remained with Bridger Logistics during the sale and that, to prepare for that hearing, he had been in discussions with counsel for Bridger Logistics/Ferrellgas about obtaining their documents for the arbitration.[1]  JTS objected to Eddystone's document requests on the ground that "all email servers, file management systems, and other document repositories relating to operations prior to that purchase date remained in the possession of Bridger Logistics, LLC or its affiliates."  Theodore Decl. Ex. 4 at 1–2 (JTS Objections and Responses to Claimant's First Request for Production, July 29, 2016).  On July 13, Eddystone served a subpoena on Bridger Logistics and its parent Ferrellgas, seeking the documents needed for the arbitration directly from them.  *Eddystone Rail Company v. Ferrellgas Partners*, No. 1:16-mc-00295-P1 (S.D.N.Y. Aug. 10, 2016), ECF No. 3-6.  At the time, Rios and Gamboa still worked for Ferrellgas and were the most knowledgeable parties there about all issues related to Eddystone.

Notwithstanding their current assertion that "none of the Proposed Intervenors had reason to believe that Eddystone would seek to hold them liable for any award issued in the arbitration prior to the commencement of the Pennsylvania Action," Dkt. 31 at 5,[2] Proposed Intervenors clearly contemplated that Eddystone would ultimately seek to recover from them the amounts due under the RSA.  While vigorously opposing Eddystone's efforts to enforce the subpoena,

---

[1] Counsel for JTS:  "And unfortunately, the purchase and sale agreement – which we were not involved in – did not call for the return of electronically-stored information, such as e-mails and servers.  We have requested from people at Ferrellgas … that they provide to us documents from Ferrellgas' possession from the Bridger time frame."  Theodore Decl. Ex. 3 at 19:5–14 (Excerpts of Tr. of June 29, 2016 Hr'g).

[2] *See also* Theodore Decl. Ex. 2 at 16:19–22 ("[W]e had no reason to know we should intervene.").

they told Judge Caproni that it was "plainly an effort by ERC to obtain discovery from non-party FGP to build a separate lawsuit against FGP." *Eddystone Rail Co. v. Ferrellgas Partners*, No. 1:16-mc-00295-P1 (S.D.N.Y. Aug. 11, 2016), ECF No. 6 at 1.

Proposed Intervenors were well aware of the arbitration and the possibility of an award based on settlement as expressly contemplated in SMA Rule 31.  Proposed Intervenors could have asked Eddystone and JTS to participate in the arbitration and contest any result, but they never did so.  Instead, Proposed Intervenors made every effort *not to* appear before the arbitration panel.  When Eddystone moved to enforce the arbitral subpoena against Ferrellgas, they challenged the panel's jurisdiction to compel Ferrellgas's appearance and production of documents.  *Id.*, ECF No. 6 at 2 n.1.

### C.      Settlement & Arbitral Award

In December 2016, Eddystone and JTS reached a settlement in principle, subject to the arbitral panel's entry of a settlement award under SMA Rules.  Dkt. 5-3.  Pursuant to that settlement, JTS's current owners transferred cash and other assets worth substantial amounts to Eddystone, and Eddystone gave them a release.  The panel entered an award against JTS on January 24 pursuant to Rule 31 of the SMA Rules.  The award amount is the sum of the amounts past due under the RSA plus the future "take or pay" payments discounted to present value.[3]

On February 2, 2017, Eddystone filed an action against Proposed Intervenors in the Eastern District of Pennsylvania.  The action alleges that:

- JTS was an alter ego of Proposed Intervenors;

---

[3] The Panel entered an award for $139,050,406.77.  Amounts past due under the contract totaled $37,291,942.37.  Future payments owed through the end of the contract totaled $105,349,812, the present value of which, when discounted 2% per year, equaled $101,758.464.40.

- Proposed Intervenors stripped JTS of assets before transferring it to Jamex Marketing, in violation of fraudulent transfer laws; and

- Proposed Intervenors breached fiduciary duties that they owed creditors as controlling persons of an insolvent entity, JTS.

*Eddystone Rail Co. v. Bridger Logistics*, No. 2:17-cv-00495-RK (E.D. Pa.), ECF No. 1 ¶¶ 52–77. Unless Eddystone succeeds on those claims, it will not recover against Proposed Intervenors. Proposed Intervenors have moved to dismiss the complaint. *Id.*, ECF Nos. 34–35.  Their motion has been fully briefed, and the matter is pending before Judge Kelly.

Eddystone filed this action to convert the award into a judgment, as contemplated by the FAA.  9 U.S.C. § 9.  Eddystone does not request entry of any judgment here against any of Proposed Intervenors.  In accordance with established precedent, Eddystone does not request any ruling whatsoever as to the award's preclusive effect on Proposed Intervenors.

Eddystone has made no secret of the fact that the arbitration award was obtained via settlement.  And there is nothing that will prevent the Proposed Intervenors from bringing that fact or any other fact to the attention of the Eastern District of Pennsylvania if and when it considers the effect of the award.

**ARGUMENT**

I. **THE PROPOSED INTERVENORS ARE NOT ENTITLED TO OPPOSE CONFIRMATION OF THE AWARD**

A. **A Non-Party to an Arbitration Cannot Intervene to Block Confirmation of an Arbitral Award**

Under the FAA, only a "party to the arbitration" may seek to vacate, modify, or correct an arbitral award.  9 U.S.C. §§ 10, 11.  Further, a court "must" confirm an award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11."  *Id.* § 9.  For this reason, Courts in this Circuit consistently have held that "a non-party to the arbitration may not

seek to overturn its outcome." *Meshkin v. Vertrue*, No. 3:07CV109(CFD), 2007 WL 2462172, at

*2 (D. Conn. Aug. 28, 2007); *see also Katir v. Columbia Univ.*, 821 F. Supp. 900, 901 (S.D.N.Y.

1993) ("Because Katir was not a party to the arbitration, she lacks standing to petition to vacate

the Award."), *aff'd* 15 F.3d 23, 25 (2d Cir. 1994) ("Katir was not a party to the arbitration . . . .

Accordingly, Katir lacks standing to challenge the award.").

Here, the only parties to the arbitration were Eddystone and JTS. "Since [Bridger] was

not a party to the arbitration, it has no standing to move to vacate the award." *Dundas Shipping*

*& Trading Co. v. Stravelakis Bros.*, 508 F. Supp. 1000, 1003 (S.D.N.Y. 1981).

Proposed Intervenors attempt to distinguish these cases by claiming that they do not

involve intervention and "stand only for the proposition that a non-party to an arbitration may

not *commence* a proceeding seeking to vacate award." Dkt. 31 at 9 n.7 (emphasis in original).

On the contrary, *Dundas* involved court proceedings brought by the parties to the arbitration, and

the non-party to the arbitration was not allowed to join with one of the parties to seek vacatur.

508 F. Supp. at 1001, 1003. Nor do *Katir* or *Meshkin* so much as suggest that the restriction on

vacatur is limited to commencement of proceedings or that it does not apply when a non-party

seeks to intervene in an ongoing confirmation proceeding. In *Katir*, the Second Circuit held that

a non-party "does not have standing to challenge an arbitration proceeding," not that it lacks

standing to commence an action. 15 F.3d at 24. *Meshkin* similarly held that a non-party "lacks

standing to *seek vacatur* of the arbitration panel's decision," not that it lacks standing to

commence an action for vacatur. 2007 WL 2462172, at *2 (emphasis added). And this rule has

been uniformly applied outside this Circuit as well.[4]

---

[4] *See, e.g.*, *Local 13, Int'l Longshoremen's & Warehousemen's Union v. Pac. Mar. Ass'n*, 441 F.2d 1061, 1064 (9th Cir. 1971); *Rocky Mountain Biologicals, Inc. v. Microbix Biosystems*,

Proposed Intervenors attempt to rely on *Contracting Plumbers*, but that decision actually endorses the general rule that non-parties may not challenge an arbitral award.  *See Ass'n of Contracting Plumbers of City of N.Y. v. Local Union No. 2 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Can.*, 841 F.2d 461, 467 (2d Cir. 1988). The Second Circuit allowed intervention only as a "limited exception" based on the extraordinary facts present in that case.  *Meshkin*, 2007 WL 2462172, at *2.

*Contracting Plumbers* involved a trade line jurisdiction dispute between plumbers' local unions and pipefitters' local unions, both members of the intervenor international union, the United Association of Contracting Plumbers.  Under the international union's constitution, it had the power to decide such disputes and had decided in favor of the pipefitters.  The plumbers and their contracting associations then secretly launched private arbitrations, and the arbitrator ordered the plumbers to perform the work.  The parties obtained confirmation of the awards and injunctions compelling the plumbers to perform the work.  When the international union learned of the injunctions, it successfully vacated the judgments and awards.

On appeal, the Second Circuit noted that the trade line dispute was not "subject to arbitration" under the terms of the relevant collective bargaining agreements.  841 F.2d at 467. And the Court found that the award had an immediate, non-contingent effect on the international union:  "the arbitration decisions and injunctions . . . prevent[ed] the [United Association] from exercising its constitutional authority to establish work jurisdiction among its local unions."  *Id*. at 466–67.  Though the intervenor union should have been acting in place of the arbitrator, it was

---

*Inc.*, 986 F. Supp. 2d 1187, 1196 (D. Mont. 2013); *Bacashihua v. U.S. Postal Serv.*, 859 F.2d 402, 405 (6th Cir. 1988); *Nat'l Envtl. Servs. Corp. v. Ins. Co. of State of Pa.*, No. 4:06CV240-DJS, 2007 WL 3330215, at *4 (E.D. Mo. Nov. 6, 2007); *Dupree v. Nat'l Ass'n of Letter Carriers*, No. 12-CV-576-JPG-DGW, 2013 WL 2597511, at *8 (S.D. Ill. June 11, 2013).

not informed of the arbitration until after it occurred.  *Id*. at 466.  The result thus "directly affect[ed] [the intervenors'] rights" and "undermine[d] one of the primary reasons for the [international union's] existence:  to avoid trade line jurisdiction disputes between the local unions."  *Id*. at 467.  In sum, the arbitration governed and undermined the rights of the intervenor union, the intervenor had no notice of or opportunity to join the arbitration, and the arbitrator lacked jurisdiction as the issue decided in the arbitration was not "subject to arbitration."  *Id*.

Notably, in *Contracting Plumbers* the question of whether the international union had a right to intervene was not even before the court because the parties *consented* to the international union's intervention for the purpose of moving to set aside the awards and injunctions.  *Id*. at 466.  With all parties having consented, the Second Circuit examined whether the FAA's limitation on the power "to vacate an arbitration award 'upon the application of any party to the arbitration'" nonetheless prevented the international union from seeking to vacate the arbitral award.  *Id*. at 467.  The Court concluded that, "*once the right to intervene is established*," "the intervenors have standing in this action equal to that of Locals 1 and 2 and, therefore, may move to vacate the arbitration awards and injunctions under 9 U.S.C. § 10."  *Id*. (emphasis added).[5]

In coming to this conclusion, the Second Circuit did not propose to overturn the general rule that non-parties may not vacate arbitration awards.  The decision *distinguished* other cases holding that union members, as non-parties, cannot challenge the results of an arbitration, because of the extraordinary and direct interest that the intervening union had in the arbitration award and the fact that the dispute was not even properly subject to arbitration.  *Id*. at 467.

---

[5] As discussed below, this reasoning – and thus even the limited exception enunciated in *Contracting Plumbers* – is in question pending the Supreme Court's decision in *Town of Chester, N.Y. v. Laroe Estates*, No. 16-605 (U.S. argued Apr. 17, 2017).  *See* Section I.C.

The situation here is just the opposite:  Proposed Intervenors were aware of the arbitration and that it might be followed by litigation against them, but decided not to make any effort to intervene.  *See* below Section II.A.3.  And there is no question that Proposed Intervenors' interest is contingent upon the results of separate litigation pending in Philadelphia.  *See* below Section II.A.1.  Subsequent decisions have reaffirmed that *Contracting Plumbers* should not be read to allow non-parties who are not situated similarly to the United Association to challenge arbitral awards.  *See Katir*, 15 F.3d at 24; *Meshkin*, 2007 WL 2462172, at \*2.

Indeed, treating *Contracting Plumbers* as a general rule rather than as a limited exception would sap the FAA's express prohibition on vacatur of arbitral awards by non-parties of any meaning.  Any non-party could challenge an arbitral award simply by petitioning to intervene and then moving to vacate the arbitral award.  The FAA forbids just that, and the Second Circuit has never contemplated such a result.

### B.   Proposed Intervenors May Not Seek Relief Different From That Requested by the Existing Parties to the Litigation

Even if the Proposed Intervenors otherwise satisfied the requirements of intervention, they cannot intervene because they seek to vacate the arbitral award, relief neither party is seeking in this proceeding.  Those cases in which a party has been allowed to intervene despite its own lack of standing hold that the intervenor may assert only theories and seek only relief sought by the existing parties to the litigation.  Here, that does not include vacatur.  The Supreme Court and the Second Circuit forbid what Proposed Intervenors ask to do – intervene in a case and seek relief that no party has requested.

The Second Circuit has held that a party may not intervene on a plaintiff's side of the case unless it "asserts the same legal theories and seeks the same relief as the existing plaintiff." *Laroe Estates v. Town of Chester*, 828 F.3d 60, 66 (2d Cir. 2016), *cert. granted*, 137 S. Ct. 810

(2017); *accord Wash. Elec. Coop. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir.

1990) ("WEC's complaint defined the general scope of the action and VDPS cannot now by

intervention radically alter that scope to create a much different suit.").

This holding comports with the Supreme Court's decision in *Trbovich v. United Mine*

*Workers*, 404 U.S. 528 (1972).  There, the Supreme Court considered a statute that allowed the

Secretary of Labor alone to sue for violation of a law governing union elections.  *Id.* at 531.  The

Court held that although the union member could not initiate his own suit, he could intervene "so

long as that intervention is limited to the claims of illegality presented by the Secretary's

complaint."  *Id.* at 537.  Thus, the intervenor could not "add to the Secretary's complaint two

additional grounds for setting aside the union election." *Id.*[6]

Here, Eddystone's petition seeks to confirm the award, and JTS does not oppose

confirmation.  As a result, Proposed Intervenors seek relief that is the precise opposite of that

sought by the parties – and to which they have no independent entitlement as non-parties to the

arbitration.  Vacatur is independent, affirmative relief, not even a defense to confirmation.  *See*

*Florasynth v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) (failure to move to vacate within

statutory period precludes a party from later seeking "that relief" when an opponent moves to

confirm); *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d

---

[6] Because *Trbovich* was not considered in *Contracting Plumbers* (along with the merits of intervention itself), the precedent set in *Contracting Plumbers* is of limited applicability.  If an issue was never "briefed, argued, or decided" in an earlier case, the issue is not resolved on the facts of that case.  *Korwek v. Hunt*, 827 F.2d 874, 877 (2d Cir. 1987).  It "is not binding precedent." *Id.*  And because the arbitral parties consented to the international union's intervention, 841 F.2d at 466, the court's observations on the right to intervene can be considered non-binding *dicta*.  *See Schwabenbauer v. Bd. of Educ. of City Sch. Dist. of City of Olean*, 777 F.2d 837, 842 (2d Cir. 1985) (holding that earlier statements that were "not necessary to or a part of" a prior decision were non-binding *dicta*).

85, 89 (2d Cir. 1998) (vacatur in New York arbitration statute is affirmative relief).  Thus, under

established law, the Proposed Intervenors have no right to intervene to oppose confirmation.

### C.    Under Any of the Positions Advanced in *Laroe Estates*, Proposed Intervenors Lack Standing to Seek Vacatur of the Award

At the pre-motion hearing on the motion to intervene, the Court solicited both sides'

views on *Town of Chester, N.Y. v. Laroe Estates*, No. 16-605 (U.S. argued Apr. 17, 2017).  The

arguments advanced in *Laroe Estates* show the weakness of Proposed Intervenors' position.

Every single one of the legal principles advanced by Petitioner, Respondent, or the United States

as *amicus* – or proposed by Justices during oral argument – would prevent Proposed Intervenors

from intervening in this proceeding to seek vacatur of the award.  No one in *Laroe Estates* has

come close to suggesting that a non-party intervenor may, by virtue of intervention, seek relief to

which it is not entitled on its own account and which has not been requested by the existing

parties to the litigation.

*Laroe* presents the question of whether a party must have its own Article III standing in

order to intervene under Rule 24.  Imposing an independent Article III standing requirement – as

proposed by the *Laroe* petitioner, the Town of Chester – would undercut the reading of

*Contracting Plumbers* on which Proposed Intervenors rely to justify intervention in this case.

Proposed Intervenors argue that, under *Contracting Plumbers*, "no independent ground of

jurisdiction need be asserted" for an intervenor to have "standing equal to that of the parties to

that arbitration," thereby allowing them to exercise an arbitration party's right to seek vacatur

notwithstanding the express contrary language of the FAA.  Dkt. 31 at 8 (quoting *Contracting

Plumbers*, 841 F.2d at 467).  Imposing an independent Article III standing requirement on

intervenors would vitiate this piggybacking approach by which intervenors can simply step into

the shoes of the existing parties so long as they satisfy the requirements of Rule 24.  Thus, an

Article III ruling for the *Laroe* petitioner would nullify the reading of *Contracting Plumbers* by which Proposed Intervenors seek to avoid the FAA's prohibition on vacatur by non-parties to the arbitration.

An Article III ruling in *Laroe* would also doom intervention because Proposed Intervenors lack Article III standing to vacate the award. "[A] plaintiff must demonstrate standing for each claim he seeks to press" and "separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Friends of Earth v. Laidlaw Envtl. Services (TOC)*, 528 U.S. 167, 185 (2000). In other words, Proposed Intervenors need their own standing to seek the specific relief they want – vacatur – but that is expressly denied to them by Section 10 of the FAA. And Proposed Intervenors lack standing to seek *any relief* because they have suffered no "injury in fact" – "a harm . . . that is 'concrete' and 'actual or imminent, not conjectural or hypothetical'" – the "irreducible constitutional minimum" for Article III standing. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102–03 (1998) (citation omitted). As described below, Proposed Intervenors do not allege any concrete, non-contingent injury that might satisfy even the standards of Rule 24, much less the more exacting standards of Article III.

Proposed Intervenors fare no better under the rule proposed by the *Laroe* respondent. While the latter deny that intervenors must always have independent Article III standing, they acknowledge that this dispensation applies only "so long as [the intervenors] assert the same claim and seek the same relief" as that sought by an original plaintiff who does have Article III standing. Br. of Respondent at 1, *Town of Chester, N.Y. v. Laroe Estates*, No. 16-605 (U.S. argued Apr. 17, 2017), *available at* http://www.scotusblog.com/wp-content/uploads/2017/03/16-605-respondent-merits.pdf. Thus, the *Laroe* respondent is at pains to emphasize that it is "not

- 15 -

required to demonstrate independent standing because [it] brings the same claim and seeks the same relief as a plaintiff whose standing is undisputed." *Id*. at 2.

That is very different from what Proposed Intervenors seek to do here. Rather than seek the same relief as a plaintiff with standing, Proposed Intervenors seek relief requested by no existing party to this proceeding. But as explained by amicus the United States, "seeking . . . relief that is broader than or different from the relief sought by the original plaintiff(s) . . . [is] permissible only if the intervenor establishes Article III standing." Br. of United States as Amicus Curiae at 16, *Town of Chester, N.Y. v. Laroe Estates*, No. 16-605 (U.S. argued Apr. 17, 2017), *available at* http://www.scotusblog.com/wp-content/uploads/2017/03/16-605-tsac-us.pdf. Indeed, at oral argument no party or Justice suggested that an intervenor who had lacked a right to relief on its own account could seek that relief by expanding on the relief requested by an existing party to the litigation.[7] In sum, nobody in *Laroe* has even *proposed* to allow what Proposed Intervenors seek to do here: to come into the case without any independent right to seek vacatur and then move to vacate on the ground that an existing party *could* have done so, even though neither party has sought such relief.

## II.   PROPOSED INTERVENORS CANNOT SATISFY THE REQUIREMENTS OF RULE 24

"Under Rule 24(a)(2) … an intervener must show that: (1) the application is timely; (2) 'the applicant claims an interest relating to the property or transaction which is the subject matter of the action....'; (3) the protection of the interest may as a practical matter be impaired by the disposition of the action; and (4) the interest is not adequately protected by an existing party."

---

[7] *See, e.g.*, Tr. of Oral Arg. at 10, *Town of Chester, N.Y. v. Laroe Estates*, No. 16-605 (U.S. argued Apr. 17, 2017) ("JUSTICE SOTOMAYOR: . . . [A]utomatic intervenors [under Rule 24(a)(2)] … are limited to only the claims of relief that the plaintiff has asked for.").

*Restor-A-Dent Dental Labs. v. Certified Alloy Prods.*, 725 F.2d 871, 874 (2d Cir. 1984).

Proposed Intervenors fail this test.

### A.     Proposed Intervenors Lack the "Direct, Substantial, and Legally Protectable Interest" Required Under Rule 24(a)(2)

#### 1.     A "Direct" Interest Cannot Be Contingent on Collateral Litigation

To intervene as of right under Rule 24(a)(2), a party must show a "direct interest" in the proceeding's outcome.[8]  Courts have repeatedly reaffirmed that a "direct interest" is not one that is "contingent upon the occurrence of a sequence of events," including the outcome of collateral litigation.  *Compagnie Noga D'Importation et D'Exportation S.A. v. Russian Federation*, No. 00 Civ. 0632WHP, 2005 WL 1690537, at *3 (S.D.N.Y. July 20, 2005) (Pauley, J.); *see also Restor-A-Dent*, 725 F.2d at 875; *Wash. Elec. Co-op.*, 922 F.2d at 97.  Here, any interest that Proposed Intervenors may have in the arbitration award against JTS is contingent on the outcome of the Eastern District of Pennsylvania litigation, in which Judge Kelly could ultimately determine whether the arbitral award should have preclusive effect on them and where Proposed Intervenors claim independent defenses to liability.

At the outset, Proposed Intervenors can only hypothesize that confirmation of the award "may" have "preclusive effect" on them in the Pennsylvania litigation.  Dkt. 31 at 15.  And it is for the Eastern District of Pennsylvania – which would be asked to apply the award to Proposed Intervenors – to decide whether the arbitral award will have any preclusive effect on them.  *See Covanta Onondaga Ltd. v. Onondaga Cnty. Res. Recovery Agency*, 318 F.3d 392, 396–398 (2d

---

[8] Proposed Intervenors argue that the "interest" prong can be applied "less rigidly" because this case involves "substantial public policy" concerns.  Dkt. 31 at 11 n.8.  In the case they cite, the U.S. government sought to intervene in a matter involving a head of state's diplomatic immunity.  *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 384 (S.D.N.Y. 2002).  This case presents no such public policy considerations.

Cir. 2003). "Whether the court's findings [in a consent decree resulting from a settlement] have a preclusive effect . . . only becomes ripe for determination if and when the Settling Parties use the findings and conclusions in other contexts." *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 210 n.5 (3d Cir. 2003).

Moreover, Proposed Intervenors "dispute that any legal basis whatsoever exists to hold any of them liable for the debts of JTS, valid or otherwise." Dkt. 9 at 2. This is exactly what does *not* constitute a direct interest of the sort sufficient to justify intervention. In analogous cases, courts have consistently held that a non-party has no direct interest in litigation if its potential liability for the sums at issue depends on a hypothetical future decision in yet a different litigation. Thus, the Second Circuit has held that insurers who are disputing coverage have only a contingent interest in an underlying suit against their insured because they may be found not liable for the losses at issue, regardless of the outcome of the litigation in which they seek to intervene. *See Restor-A-Dent*, 725 F.2d at 875. And the Second Circuit has held that a putative intervenor has no direct interest in a lawsuit where it would suffer no consequences as the result of a judgment absent a subsequent ruling by the public service board that ratepayers were entitled to a portion of the recovery. *See Wash. Elec. Co-op.*, 922 F.2d at 97.

Similarly, in *Donaldson v. United States*, 400 U.S. 517, 531 (1971), the Supreme Court held that a taxpayer had no "significantly protectable interest" that would allow him to intervene in an IRS action to obtain tax documents from his employer. Similar to the Proposed Intervenors here, the taxpayer believed that the sought-after documents could be used against him in a subsequent action. The Court rejected intervention, holding that the taxpayer would be free to assert a corresponding claim or defense "in due course at its proper place in any subsequent trial." *Id.*

Proposed Intervenors' liability is dependent on the outcome of the Pennsylvania litigation, and "[t]he possibility that a party will establish an interest in a judgment through a pending [alter ego] lawsuit in another court is a contingent interest" of the sort that does not suffice under Rule 24.  *Katz v. Berisford Int'l PLC*, No. 96 CIV. 8695(JGK), 2000 WL 1760965, at *5 (S.D.N.Y. Nov. 30, 2000).

Similarly, in *Compagnie Noga*, this Court denied intervention precisely because the asserted interest depended on the outcome of collateral litigation.  2005 WL 1690537, at *4.  Noga had filed an action to confirm and enforce an arbitration award against the Russian Federation under the FAA Chapter 2.  *Id.* at *1.  Montreux claimed an interest in the award, alleging that Noga had assigned it the right to 20 percent of any debt that was collected.  *Id.* at *2–3.  It moved to intervene to seek an order preventing Noga and Russia from settling the action without Montreux's input and setting aside a portion of any amount collected until Montreux's rights could be determined.  *Id.* at *3.  Relying on *Restor-a-Dent* and *Washington Electric*, this Court denied intervention as of right because Montreux's "asserted interest springs from [separate] breach of contract claims" between Noga and Montreux, and thus its "interest in [the confirmation] action ha[d] not yet crystallized."  *Id.* at *4-5.  Here, too, the contingent possibility that Bridger may be liable for JTS's debts if it loses in the Eastern District of Pennsylvania is not the sort of "crystallized" interest that justifies intervention.[9]

---

[9] By contrast, all of Proposed Intervenors' cases involve far more substantial interests than those at issue here.  In *Contracting Plumbers*, the arbitral awards and injunctions "directly affect[ed] [the intervenors'] rights as they prevent the[m] from exercising its constitutional authority to establish work jurisdiction among its local unions."  841 F.2d at 466–67.

Unlike this litigation, the intervenors' interest in *S&S Kings Corp. v. Westchester Fire Ins. Co.*, No. 16-CV-2016 (RA), 2017 WL 396741, at *2 (S.D.N.Y. Jan. 27, 2017), involved no contingency and did not depend on the outcome of subsequent litigation.  The intervenor S&N

### 2.      Proposed Intervenors Have No "Stare Decisis Interest"

Unable to claim a direct interest in the outcome of this case, Proposed Intervenors claim a vague "*stare decisis*" interest.  But there is no potential *stare decisis* interest here because this litigation – a garden variety confirmation proceeding – does not attempt to decide a significant question of law that may have precedential effect in other cases.  Each of the cases on which Proposed Intervenors rely raised a legal policy question with significant consequences for non-parties; there is no such question at issue here and thus no *stare decisis* interest at stake.

In *Oneida Indian Nation v. New York*, 732 F.2d 261, 265–66 (2d Cir. 1984), a tribal confederation claimed title to land that was the subject of litigation between two separate nations and the State of New York.  Noting that the "apprehended force of *stare decisis* will not support intervention as of right in all cases," the Second Circuit held that it did in the "unusual circumstances" where there was "a significant likelihood" that the litigation would decide "conclusions of law on issues of first impression . . . with respect to [relevant] treaties . . . and the land titles at stake" that "would control any subsequent lawsuit."  *Id*.  Similarly, *New York Public Interest Research Group v. Regents of University of State of New York*, 516 F.2d 350, 351 (2d Cir. 1975), involved a challenge to a prescription drug price advertising regulation, the overturning of which would have a significant effect on the intervenors' economic interests.

---

and the defendant Westchester were "jointly and severally liable to [plaintiff] S&S Kings" and "S&N will be obligated to indemnify Westchester if S&S Kings prevails."  *Id*.  By contrast, Proposed Intervenors here strongly dispute that they will have any obligations, regardless of the outcome of this proceeding.

Finally, in *Grumman Flxible Corp. v. Dole*, 102 F.R.D. 36, 38 (D.D.C. 1983), the question at issue was the validity of an award to the intervenor itself.  There was no contingent interest of the sort Proposed Intervenors advance here.

Conversely, in *Sackman v. Liggett Group*, 167 F.R.D. 6 (E.D.N.Y. 1996), and *Brennan v. New York City Board of Education*, 260 F.3d 123 (2d Cir. 2001), the litigation threatened to decide a legal question with precedential impact directly on the legal rights of non-parties.  In *Sackman*, tobacco manufacturers intervened to assert their *own* attorney-client privilege in documents at issue.  167 F.R.D. at 21.  And in *Brennan*, white employees who stood to lose seniority as a result of the remedy requested in a discrimination suit were permitted to intervene to defend their job status.  260 F.3d at 132.

None of these cases involves an interest comparable to the contingent interest Proposed Intervenors claim here:  that they may be held liable in a collateral proceeding for amounts due under the RSA.

### 3.   Proposed Intervenors' Attempt to Intervene After the Settlement is Untimely

To intervene as of right under Rule 24(a)(2), the application must be timely.  *Restor-A-Dent*, 725 F.2d at 874.  In considering timeliness, the Court may consider

> (1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention.  Generally, the court's analysis must take into consideration the totality of the circumstances."

*In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000) (internal citation omitted).

Deciding to intervene only after a settlement "weigh[s] heavily against" intervention. *GemCap Lending I, LLC v. Taylor*, No. 15-55332, 2017 WL 603859, at *1 (9th Cir. Feb. 15, 2017) (citation omitted).  A party that knows a lawsuit may "potentially affect[] [its] interests" may not "wait on the sidelines hoping that another party or the court would step up to the plate for [it]."  *Id.*  And the fact that a party was prompted to intervene only after a development that "came as a total surprise" is no excuse when the proposed intervenors "knew or should have

known of [their] interest …. long before they filed their motions for intervention." *Catanzano v.
Wing*, 103 F.3d 223, 232–33 (2d Cir. 1996).[10]

Here, Proposed Intervenors knew of the arbitration for months and made no effort to
intervene until after the settlement.  As noted, JTS counsel already reported on June 29 that he
had communicated with Ferrellgas's lawyers about documents for the arbitration.  Eddystone
subpoenaed Ferrellgas for documents on July 13.

While Proposed Intervenors now assert that none of them "had reason to believe that
Eddystone would seek to hold them liable for any award issued in the arbitration prior to the
commencement of the Pennsylvania action," Dkt. 31 at 5, this contradicts what they told Judge
Caproni four months before the settlement:  that Eddystone's subpoena was "plainly an effort by
ERC to obtain discovery from non-party FGP to build a separate lawsuit against FGP."
*Eddystone Rail Co. v. Ferrellgas Partners*, 1:16-mc-00295-P1 (S.D.N.Y.), ECF No. 6 at 1.

Nonetheless, Proposed Intervenors made no effort to appear in the arbitration.  In
response to Eddystone's action to enforce the subpoena against Ferrellgas (which owned Bridger
Logistics and employed Rios and Gamboa), Ferrellgas wrote:  "FGP did not consent to appear
before the arbitration panel, as a New York-based arbitration panel has no jurisdiction to compel
an[] appearance and production of documents in New York from Kansas-based FGP or its
Texas-based affiliates."  *Id.*, ECF No. 6 at 2 n.1.  Proposed Intervenors presumably hoped that
JTS would "step up to the plate" for them by winning the arbitration.  *GemCap*, 2017 WL

---

[10] Proposed Intervenors misleadingly cite *United Airlines, Inc. v. McDonald*, 432 U.S.
385 (1977), for the proposition that a motion to intervene was timely when filed 18 days after the
final judgment.  Dkt. 31 at 10.  In that case, the applicant asked to intervene so she could
participate in the post-judgment appeal respecting denial of class certification, *id.* at 392, and
thus the motion was made at the beginning of the subject litigation, not the end.

603859, at *1.  When this strategy failed, they decided to take a second bite at the apple – in effect, seeking to turn back the clock and re-litigate the award all over again.

As a legal matter, nothing would have prevented JTS and Eddystone from modifying their arbitration clause to allow Proposed Intervenors to join.  As Armand Paré, an expert on SMA proceedings, opines in the attached declaration, had Proposed Intervenors sought to enter the arbitration, they could have done so.  *See* Paré Decl. ¶¶ 8–13.  And there can be little doubt that Eddystone and JTS would have allowed this.  As Eddystone received more documents in arbitral discovery from JTS and third parties, it became clear that Proposed Intervenors had stripped JTS of the assets that might have satisfied an award.  By proceeding against JTS alone, Eddystone risked that any arbitration award against JTS in which Proposed Intervenors did not participate may have no preclusive effect against the Potential Intervenors and Eddystone would have to litigate the same issues all over again.  Nor would JTS have had any incentive to keep another potential judgment debtor from joining and aiding in its defense or sharing in its liability.

These facts readily distinguish the instant matter from *Contracting Plumbers*, where an intervenor with an *existing direct interest* knew nothing of the arbitrations and therefore had no chance to intervene.  And, of course, the parties in *Contracting Plumbers* consented to the intervention.  Here, where any prejudice to Proposed Intervenors resulted from their own inaction, where they "sat on the sidelines" until a settlement had been reached, where they could have had (in the arbitration) and will have (in the Pennsylvania action) every opportunity to raise defenses to enforcement of the award, and where they seek to deprive Eddystone and JTS of the finality to which the FAA entitles them, the "totality of the circumstances" weighs against finding Proposed Intervenors' application to be timely.

### B.     There Is No Basis for Permissive Intervention

Rule 24(b) "authorizes a Court to allow a party to intervene after timely application if the 'applicant's claim or defense and the main action have a question of law or fact in common.'" *Compagnie Noga*, 2005 WL 1690537, at *5 (citation omitted).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

At the threshold, Proposed Intervenors make no attempt to identify the "common question of law or fact" shared between the petition to confirm and a cross-petition to vacate. Dkt. 31 at 17–18.  This is because there is none.  The cross-petition raises purported issues of "fraud, corruption or undue means," arising under FAA Section 10.  But the only matters presented in this action to confirm under Section 9 are whether the arbitration award exists, whether JTS consented to it, and whether there is a "barely colorable justification for the outcome reached."  *Primex Plastics Corp. v. TriEnda LLC*, No. 13-CIV-321, 2013 WL 1335633, at *3 (S.D.N.Y. Apr. 3, 2013).  Permissive intervention should be denied for this reason alone.

Moreover, it would be highly improper to allow Proposed Intervenors to sit out the arbitration, wait to see whether it generated a result they like, and then seek a redo in the context of confirmation proceedings.  Whether the intervention will "unduly delay or prejudice the adjudication of the original parties' rights" is, according to Bridger's own authority "the most important consideration under Rule 24(b)."  *Techcapital Corp. v. Amoco Corp.*, No. 99 CIV. 5093 (AGS), 2001 WL 267010, at *3 (S.D.N.Y. Mar. 19, 2001).  This is not a case where "the marginal time cost of allowing intervention will be minimal."  *Id.*  Instead of allowing this action to move forward as the "summary proceeding" that the parties desire and to which FAA Section 9 entitles them, Proposed Intervenors wish to force a full-blown re-litigation of the matters settled in arbitration.  *Primex*, 2013 WL 1335633, at *2.

Moreover, Proposed Intervenors want to impose the burden of running this re-litigation in parallel with the action in Philadelphia, which has already reached the motion-to-dismiss stage and entered into early discovery, and where they are free to raise the issues they wish to litigate here.  Other courts have denied permissive intervention when a third party sought to "unduly complicate and further delay" litigation by injecting complex issues into otherwise straightforward actions.  *Wash. Elec. Co-op.*, 922 F.2d at 98; *Compagnie Noga*, 2005 WL 1690537, at *6.  And these considerations are particularly axiomatic in the arbitral confirmation context of "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court" with the reviewing court simply to decide "whether the arbitrator's award falls within the four corners of the dispute as submitted to him."  *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984); *Orion Shipping & Trading Co. v. E. States Petrol. Corp. of Pan., S. A.*, 312 F.2d 299, 301 (2d Cir. 1963).

## CONCLUSION

For the foregoing reasons, the motion to intervene should be denied.

Date:  June 2, 2017

Respectfully submitted,

/s/ Jeffrey M. Theodore
Filiberto Agusti
Evan Glassman
Jeffrey M. Theodore (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
fagusti@steptoe.com
eglassman@steptoe.com
jtheodore@steptoe.com

*Counsel for Eddystone Rail Company, LLC*

- 25 -