UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------- x
EDDYSTONE RAIL COMPANY, LLC,          :
                                      :
                Petitioner,     :
                                      :
   -against-                         :  Case No: 17-cv-01266-WHP
                                      :
JAMEX TRANSFER SERVICES, LLC,         :
                                      :
                Respondent.     :
                                      :
---------------------------------- x

# MEMORANDUM OF LAW IN SUPPORT OF BRIDGER LOGISTICS, LLC, FERRELLGAS PARTNERS, L.P., AND FERRELLGAS, L.P.'S MOTION PURSUANT TO FED. R. CIV. P. 59(e) AND 60(b)

**BRYAN CAVE LLP**
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 541-2000
Fax: (212) 541-4630

*Attorneys for Proposed Intervenors*
*Bridger Logistics, LLC, Ferrellgas*
*Partners, L.P., and Ferrellgas, L.P.*

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 2 |
| APPLICABLE LEGAL STANDARD | 3 |
| ARGUMENT | 5 |
| I. THE BRIDGER PARTIES SHOULD BE PERMITTED TO INTERVENE | 5 |
|     A. Eddystone's New Affirmative Defense Further Demonstrates The Bridger Parties' Substantial Interests In Intervention | 5 |
|     B. The Bridger Parties Seek To Challenge A Pretextual Arbitration Award That Contradicts The Underlying Settlement Agreement | 8 |
|     C. The Award Impacts Eddystone's Fraudulent Transfer Claims | 10 |
| II. THERE ARE NUMEROUS GROUNDS TO CONTEST CONFIRMATION | 11 |
|     A. The Award Should Be Vacated | 12 |
|     B. In The Alternative, The Court Could Stay Confirmation Proceedings | 12 |
| III. AT A MINIMUM, THE BRIDGER PARTIES REQUEST LEAVE TO FILE AN *AMICUS CURIAE* BRIEF | 13 |
| CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**Cases:** Page(s)

*Association of Contracting Plumbers of City of N.Y., Inc. v. Local Union No. 2 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus.*,
841 F.2d 461 (2d Cir. 1988) .................................................................... 6

*Automobile Club of N.Y., Inc. v. Port Authority of N.Y. & N.J.*,
No. 11 Civ. 6746 (RJH), 2011 WL 5865296 (S.D.N.Y. Nov. 22, 2011) .............. 14

*Benzman v. Whitman*,
No. 04 Civ. 1888 (DAB), 2006 WL 3771014 (S.D.N.Y. Dec. 15, 2006) ............. 4

*Bridgeport Guardians, Inc. v. Delmonte*,
602 F.3d 469 (2d Cir. 2010) ..................................................................... 3

*Clinton v. Jones*,
520 U.S. 681 (1997) ................................................................................. 12

*Concerned Area Residents for the Env't v. Southview Farm*,
834 F. Supp. 1410 (W.D.N.Y. 1993) ......................................................... 13

*Eddystone Rail Co., LLC v. Bridger Logistics, LLC, et al.*,
Case No. 2:17-cv-00495-RK (E.D. Pa. 2017) ............................................. 1

*Grace v. Bank Leumi Trust Co. of N.Y.*,
443 F.3d 180 (2d Cir. 2006) .................................................................... 10, 11

*Guishan, Inc. v. Arici*,
635 F. Supp. 2d 187 (E.D.N.Y. 2009) ....................................................... 4

*In re American Int'l Group, Inc. Sec. Litig.*
916 F. Supp. 2d 454 (S.D.N.Y. 2013) ....................................................... 14

*In re Puda Coal Secs. Inc., Litig.*,
No. 11 Civ. 2598 (KBF), 2014 WL 715127 (S.D.N.Y. Feb. 21, 2014) ............. 4

*LaSala v. Needham & Co.*,
399 F. Supp. 2d 421 (S.D.N.Y. 2005) ....................................................... 12

*Local One Amalgamated Lithographers of Am. v. Stearns & Beale, Inc.*,
812 F.2d 763 (2d Cir. 1987) .................................................................... 12

|  | Page(s) |
|---|---|
| *Newsday, Inc. v. Long Island-Typographical Union, No. 915, CWA, AFL-CIO*,<br>915 F.2d 840 (2d Cir. 1990) | 12 |
| *Quevedo v. Postmaster, U.S. Postal Serv.*,<br>774 F. Supp. 837 (S.D.N.Y. 1991) | 5 |
| *Rates Tech. Inc. v. Speakeasy, Inc.*,<br>685 F.3d 163 (2d Cir. 2012) | 3 |
| *Schoolcraft v. City of N.Y.*,<br>298 F.R.D. 134 (S.D.N.Y. 2014) | 4 |
| *Turner v. Burlington N. Santa Fe R.R. Co.*<br>338 F.3d 1058 (9th Cir. 2003) | 4 |
| *United States v. Apple, Inc.*,<br>No. 12 Civ. 2826 (DLC), 2012 WL 4511541 (S.D.N.Y. Oct. 2, 2012) | 14 |

**Statutes and Rules:**

| | |
|---|---|
| 9 U.S.C. § 10 | 11, 12 |
| Fed. R. Civ. P. 59(e) | 4, 5, 8 |
| Fed. R. Civ. P. 60(b) | 5, 8 |

**Other Authorities:**

| | |
|---|---|
| 12 James Wm. Moore, *Moore's Federal Practice* § 59.30 (3d ed. 2000) | 4 |

Proposed Intervenors Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P. (the "Bridger Parties"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 59(e) and 60(b) to revisit the Court's Opinion and Order dated and entered on February 7, 2018 (Dkt. 54), denying their motion to intervene in this action (the "Order"). In the alternative, the Bridger Parties request leave to file an *amicus curiae* brief before the Court decides the petition to confirm an arbitration award filed by Eddystone Rail Company, LLC ("Eddystone"). (*See* Dkt. 1.)

## PRELIMINARY STATEMENT

This proceeding arises from Eddystone's pretextual efforts to confirm an arbitration award against Jamex Transfer Services, LLC ("JTS") (the "Arbitration Award" or "Award"), which is the result of a settlement ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Eddystone seeks to enforce the award and resulting judgment not against JTS, but against the Bridger Parties—under theories of alter ego, fraudulent transfer, and breach of fiduciary duty—in litigation currently pending in the Eastern District of Pennsylvania. *See Eddystone Rail Co., LLC v. Bridger Logistics, LLC, et al.*, Case No. 2:17-cv-00495-RK (E.D. Pa. 2017) (the "Pennsylvania Action").

The Bridger Parties sought to intervene in this proceeding, but the Court declined, finding that they lack standing to intervene, either as a matter of right or with permission. In its Order, the Court focused on Eddystone's alter ego theory and concluded that the Bridger Parties lacked a substantial interest in the arbitration, at least until such time as the alter ego theory has been further litigated in the Pennsylvania Action.

The Bridger Parties ask the Court to revisit this ruling for three main reasons. First, shortly after the Court's Order, Eddystone asserted as an affirmative defense in the Pennsylvania Action that the Bridger Parties' *counterclaims* against Eddystone are precluded by "res judicata, collateral estoppel, issue preclusion, or claim preclusion, or because the [Bridger Parties] failed

1

to intervene in the arbitration proceeding where the matters at issue in the counterclaims were addressed." This important development further establishes that the Bridger Parties have a substantial interest in this arbitration, unrelated to the alter ego theory, and they may suffer impairment and prejudice if the pretextual Arbitration Award is simply confirmed.

Second, the Court's Opinion overlooks that the Arbitration Award against JTS conflicts with—and does not accurately reflect—the terms of Eddystone's settlement with JTS (the "Settlement Agreement"). This conflict, if uncorrected, threatens great prejudice to the Bridger Parties.

Third, in focusing only on Eddystone's alter ego claim, the Court overlooked the prejudicial effect the confirmed Award could have on the Bridger Parties' defense to other claims, including particularly Eddystone's fraudulent conveyance claims.

For all of these reasons, the Bridger Parties respectfully renew their request to intervene to challenge confirmation of the Arbitration Award. In the alternative, the Bridger Parties request leave to file an *amicus curiae* brief prior to confirmation of the Award.

## BACKGROUND

Eddystone commenced the present proceeding by filing its Petition on February 17, 2017. (Dkt. 1.) On May 9, 2017, the Bridger Parties sought to intervene to challenge Eddystone's Petition, pursuant to the Federal Arbitration Act ("FAA"), asserting that the Award should be vacated under 9 U.S.C. §10 or modified and corrected under 9 U.S.C. § 11 (the "Motion to Intervene"). (*See* Dkt. 31 & 32-7 at 5-6.) After the Bridger Parties and Eddystone submitted briefs and appeared for oral argument on July 14, 2017, the Court took the matter under advisement and, on February 7, 2018, issued the Order. (Dkt. 54.)

In the Order, the Court found that "in certain limited situations, a non-party may have so substantial an interest in an arbitration that it should be permitted to intervene as of right in a

2

subsequent federal confirmation proceeding." (Order at 8.) The Court concluded, however, that "the Proposed Intervenors fail to demonstrate a substantial interest *in the arbitration*," because "Eddystone must first prevail on its alter ego claim in the Pennsylvania Action before the Proposed Intervenors' interest materializes into something substantial." For essentially the same reason, the Court found that the Bridger Parties lack Article III standing. (*Id.* at 8-10, 13-17.)

On February 20, 2018, just 13 days after the Court issued its Order, Eddystone filed an Answer to the Bridger Parties' counterclaims in the Pennsylvania Action and asserted the following affirmative defense (the "Affirmative Defense"): "The counterclaims are barred by the doctrines of res judicata, collateral estoppel, issue preclusion, or claim preclusion, or because the Defendants failed to intervene in the arbitration proceeding where the matters at issue in the counterclaims were addressed."[1] (Answer at 22, attached as Exhibit A to the Declaration of Lawrence G. Scarborough ("Scarborough Decl.").) At the July 14, 2017 oral argument on the Motion to Intervene, counsel for Eddystone argued that it had not yet asserted that the Arbitration Award would have a preclusive effect on the Bridger Parties. (Dkt. 52 at 26:21-23 ("[A]t this point, we don't really know exactly when and what . . . we might even try to get preclusion.").) Soon after the Court issued its Order, however, Eddystone asserted a preclusion defense to seeking to bar the Bridger Parties' counterclaims.

## APPLICABLE LEGAL STANDARD

An order denying intervention is considered final and effectively terminates the action for a proposed intervenor. *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) ("'[A] district court's order denying intervention is a final order.'") (citation omitted);

---

[1] The Court may take judicial notice of the Eddystone's filed Answer. *See Rates Tech. Inc. v. Speakeasy, Inc.,* 685 F.3d 163, 167 (2d Cir. 2012) ("We may 'take judicial notice of a document filed in another court[.]'") (citations omitted).

3

*Benzman v. Whitman*, No. 04 Civ. 1888 (DAB), 2006 WL 3771014, at *3 (S.D.N.Y. Dec. 15, 2006) (deciding Rule 59(e) motion concerning "Court's Order denying leave to intervene").

Fed. R. Civ. P. 59(e) grants district courts "broad discretion" to revisit and amend a previous order. *See* 12 James Wm. Moore, *Moore's Federal Practice* § 59.30[4] (3d ed. 2000); *see also Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) ("A district court has considerable discretion when considering a motion to amend a judgment under Rule 59(e)."). Under Rule 59, the Court "may grant reconsideration where the party moving for reconsideration demonstrates an 'intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Schoolcraft v. City of N.Y.*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014) (granting motion for reconsideration) (citation omitted). Such a motion may also be granted when the movant demonstrates that the Court overlooked material facts that were before it on the original motion and that might "materially have influenced its earlier decision." *Id.* (citation omitted)

"It is within the Court's broad discretion to grant relief under Rule 60(b). In exercising that discretion, the Second Circuit has instructed courts to balance the policy in favor of serving the ends of justice against the policy in favor of finality." *Guishan, Inc. v. Arici*, 635 F. Supp. 2d 187, 192 (E.D.N.Y. 2009). "Pursuant to Rule 60[(b)(2)], the Court may relieve a party from a judgment, order, or proceeding due to 'newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move' to amend the judgment." *In re Puda Coal Sec. Inc., Litig.*, No. 11 Civ. 2598 (KBF), 2014 WL 715127, at *1 (S.D.N.Y. Feb. 21, 2014) (granting motion for indicative ruling that the Court intended to grant Rule 60(b) motion, vacate order denying intervention, and permit movant to intervene in the action) (quoting Fed. R. Civ. P. 60(b)(2)). Additionally, Rule 60(b) provides that a court may relieve a party from a judgment

or order due to "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3), or "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) "confers broad discretion on the court to relieve a party from a final judgment or order for 'any . . . reason justifying relief from the operation of the judgment.' A court may exercise its discretionary power under the rule whenever 'appropriate to accomplish justice,'" including "where the judgment may work an extreme and undue hardship" and "when substantial justice will thus be served." *Quevedo v. Postmaster, U.S. Postal Serv.*, 774 F. Supp. 837, 839 (S.D.N.Y. 1991) (citations omitted).

**ARGUMENT**

Pursuant to Fed. R. Civ. P. 59(e) and 60(b), the Bridger Parties ask the Court to revisit its denial of their Motion to Intervene, based on new information not previously available to the Court, material facts overlooked in the Order, and to accomplish justice.

**I.   THE BRIDGER PARTIES SHOULD BE PERMITTED TO INTERVENE.**

   **A.   Eddystone's New Affirmative Defense Further Demonstrates The Bridger Parties' Substantial Interests In Intervention.**

Because Eddystone's recent assertion of the Affirmative Defense—just 13 days after the Court's Order—further establishes the Bridger Parties' substantial interest in the confirmation proceedings, it is appropriate for the Court to revisit its decision under Rules 59(e) and 60(b).

First, the assertion of the Affirmative Defense is new evidence that significantly alters the factual and procedural record that the Court had before it in deciding the Bridger Parties' Motion to Intervene. Eddystone opposed the Motion to Intervene during the July 14, 2017 oral argument by stating, among other things, that "try[ing] to use this judgment against [the Bridger Parties] as precluding any inquiry into the damages" "is something that has not been done actually yet." (Dkt. 52 at 27:11-14.) Eddystone further argued that "defenses haven't been asserted in [the

Pennsylvania Action]," "at this point, we don't really know exactly when and what . . . [Eddystone] might even try to get preclusion." (*Id.* at 26:21-23.)

Just under two weeks after the Court issued its Order, however, Eddystone sought to preclude the Bridger Parties from asserting any counterclaims "addressed" in "the arbitration proceeding." Eddystone's change in position following the Order crystallizes the harm the Bridger Parties suffer as a result of being denied the opportunity to challenge the Arbitration Award under Fed. R. Civ. P. 24. Referencing *Association of Contracting Plumbers of City of New York, Inc. v. Local Union No. 2 United Association of Journeymen & Apprentices of Plumbing & Pipefitting Industries*, 841 F.2d 461 (2d Cir. 1988), the Court in its Order confirmed that "in certain limited situations, a non-party may have so substantial an interest in an arbitration that it should be permitted to intervene as of right in a subsequent federal confirmation proceeding." (Order at 8.) The Court ultimately concluded that "the [Bridger Parties] fail[ed] to demonstrate a substantial interest *in the arbitration*." (*Id.*)[2]

Eddystone has now effectively conceded that the Bridger Parties *do have a substantial interest* in the arbitration. Eddystone plainly states in the Affirmative Defense that "the matters at issue in the counterclaims were addressed" in the "arbitration proceeding." (Scarborough Decl., Ex. A at 22.) Assuming *arguendo* that the matters the Bridger Parties raise in their counterclaims were indeed decided during the arbitration—as Eddystone asserts—then it necessarily follows that the Bridger Parties' interests in the arbitration are substantial enough to warrant intervention under Rule 24.

---

[2] In its Order, the Court determined that (1) "the timeliness factor weighs in favor of the [Bridger Parties'] application" and (2) that the Bridger Parties' interests "are not adequately represented by either Eddystone or JTS." (Dkt. 54, Order at 13.) Given these findings, the Bridger Parties will address only their (1) substantial interest in the arbitration as the transaction underlying the action and (2) impairment of interests through the confirmation process.

6

During the proceedings before this Court, it has become evident that Eddystone purposefully excluded the Bridger Parties from the arbitration so as to reap the benefits of a settlement with JTS—which Eddystone counsel described as "an entity that had no assets" (Dkt. 24 at 9:9-10)—and then sought to confirm the pretextual Arbitration Award. Eddystone acknowledged as much in describing its litigation strategy to the Court in July 2017:

> THE COURT: When you got that information, instead of settling with an entity that you knew had no assets, you could have amended your arbitration petition, right, and brought in the parties who you felt were behind the matter.
>
> MR. AGUSTI: We could have sought, your Honor, to try to bring them in as alter egos. At that point, though, your Honor, we felt we had enough information to state a claim and we believe we have stated a fairly detailed alter ego claim in the Eastern District of Pennsylvania. But, your Honor, we were not prepared to -- we did not have the discovery to be able to take -- to be comfortable taking that case all the way to conclusion. And, your Honor, that's why we decided to finish the dispute with Jamex and then go ahead and sue the Bridger/Ferrellgas entities, your Honor.

(Dkt. 52 at 25:15-26:3.) Indeed, only nine days passed from the time the Arbitration Award was rendered on January 24, 2017, to the time that Eddystone sued the Bridger Parties in the Pennsylvania Action on February 2, 2017.

Now, taking full advantage of the Bridger Parties' inability to contest the Arbitration Award, Eddystone seeks to use the Award to preclude their counterclaims in the Pennsylvania Action, which Eddystone contends arise out of "matters" that were "addressed" in the "arbitration proceeding." Now, there can no doubt that the Bridger Parties have a substantial interest in the arbitration, which interest would be impaired by confirmation. Indeed, the Court stated in its Order (at 17 n. 2) that the counterclaims "may nullify the effect of any contractual liability memorialized in the Arbitration Agreement as to [the Bridger Parties]."

Second, Eddystone has conceded previously that non-parties have a sufficiently direct interest to justify intervention under Rule 24(a) where "the litigation threaten[s] to decide a legal

question with precedential impact directly on the legal rights of non-parties." (Dkt. 37, Opp. to Motion to Intervene at 21) (citing *Brennan v. NewYork City Bd. of Educ.*, 260 F.3d 123 (2d Cir. 2001) and *Sackman v. Liggett Group*, 167 F.R.D. 6 (E.D.N.Y. 1996)). Eddystone's assertion of the Affirmative Defense establishes its intent to use the Arbitration Award to "decide a legal question with precedential impact," *i.e.*, to assert that the Bridger Parties' counterclaims are precluded by the Arbitration Award it seeks to confirm in this Court.

Accordingly, in light of Eddystone's assertion of the Affirmative Defense on February 20, 2018 (*see* Scarborough Decl., Ex. A at 22), the Bridger Parties respectfully ask the Court to revisit its decision to deny their Motion to Intervene, pursuant to Rules 59(e) and Rule 60(b) and to prevent manifest injustice.

### B. The Bridger Parties Seek To Challenge A Pretextual Arbitration Award That Contradicts The Underlying Settlement Agreement.

Eddystone's assertion of the Affirmative Defense further demonstrates that the sole purpose for this confirmation proceeding is to impair the Bridger Parties' existing claims and defenses in the Pennsylvania Action. The goal of the Arbitration Award was not to amicably resolve disputes between Eddystone and JTS, but rather to obtain a pretextual Arbitration Award to set the stage for litigation with the Bridger Parties.

In its Order, the Court stated (at 4) that "JTS stipulate[ed] to liability." But while the Award itself states that JTS is liable for almost $140 million, Paragraph 11 of the Settlement Agreement provides that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Dkt. 44-1 (emphasis added).) The opening paragraph of the Settlement Agreement states unequivocally that ████████████████████████ (*Id.*) Thus, the Settlement Agreement ████████████

8

The Arbitration Award states (Dkt. 5-3 at 2) that it was issued pursuant to Section 31 of the Rules of the Society of Maritime Arbitrators ("SMA"), which provides as follows: "Should the parties settle their dispute during the course of arbitration, the Panel may, upon the request of the parties, set forth *the terms of the settlement* in an Award." (emphasis added).

The Arbitration Award Eddystone seeks to confirm, however, does not set forth the "terms of the settlement," which ███████████████████ To the contrary, the Award states that the arbitrators "have heard the allegations of the parties and taken testimony of certain fact witnesses at a hearing" and "DETERMINE and AWARD" that JTS (1) "materially breached and anticipatorily repudiated" its agreement with Eddystone, (2) JTS "*is liable to*" Eddystone, (3) the "defenses and counterclaims asserted by [JTS] in the arbitration are without merit," and (4) JTS "owes $139,050,406.77 in damages to [Eddystone]." (Dkt. 5-3 at 2 (emphasis added).)

In short, Eddystone entered into a settlement agreement that ███████████████████ ███████, then relied on an SMA rule permitting parties to "set forth the terms of the settlement in an Award" to obtain an agreed award *finding JTS liable for $140 million in damages.* And after the Court issued its Order, Eddystone asserted in the Pennsylvania Action that the arbitration award *precludes the Bridger Parties from asserting counterclaims*.

Eddystone asks the Court to confirm a pretextual Arbitration Award that serves no purpose outside of the Pennsylvania Action. While unchallenged by the parties, the Award contradicts the terms of their Settlement Agreement and, as a result, threatens to cause undue hardship and great prejudice to the Bridger Parties. Accordingly, the Bridger Parties respectfully ask the Court to revisit its Order pursuant to Rules 59(e) and 60(b)(3). Further, under Rule 60(b)(6), it would be unjust for this Court to deny intervention and confirm such an Award.

9

### C. The Award Impacts Eddystone's Fraudulent Transfer Claims.

Finally, while the Court's Order generally acknowledges (at 5) that Eddystone asserts fraudulent transfer and fiduciary duty claims against the Bridger Parties in the Pennsylvania Action, its decision focuses on alter ego principles rather than the effect that a judgment confirming the Arbitration Award could have on the other claims Eddystone asserts in the Pennsylvania Action. In particular, confirmation of the Award could be highly prejudicial to the Bridger Parties' ability to defend against fraudulent transfer claims, which is why the Second Circuit has determined that a non-party *does* have standing to challenge a judgment that could give rise to fraudulent transfer liability. *See Grace v. Bank Leumi Trust Co. of N.Y*, 443 F.3d 180, 188 (2d Cir. 2006) (non-parties had standing to challenge judgment under Rule 60(b)).

In *Grace*, the Second Circuit considered whether non-parties had standing to vacate a judgment pursuant to Rule 60. *Id.* at 181. As in this case, the plaintiffs in *Grace* entered into a settlement agreement with a judgment-proof defendant, with the intent to use the settlement (1) to collect from the non-parties that allegedly received fraudulent conveyances from the defendant, and (2) as a predicate for a fraudulent conveyance action against the non-parties. *Id.* at 188. The Second Circuit held that, in such circumstances, the non-parties were "strongly affected" by the judgment and had to standing to bring a Rule 60(b) motion. *Id.*

The Court explained its decision to grant an exception to the general rule that non-parties lack standing to challenge a judgment:

> [T]here is a strong possibility that the predicate judgment that forms the basis of this fraudulent conveyance action is the result of a settlement process devoid of due process protections and marred by serious procedural shortcomings. There is the appearance that plaintiffs and defendants entered settlement negotiations with the mutual intent of laying the burden of compensating plaintiffs squarely on non-party movants. Should the fraudulent conveyance claims be heard on the merits, the trial court could choose not to look behind the judgment for any improprieties. We thus carve out an exceedingly narrow exception to the well-established rule

that litigants, who were neither a party, nor a party's legal representative to a judgment, lack standing to question a judgment under Rule 60(b).

*Id.* at 189.

Here, counsel for Eddystone conceded that Eddystone intends to use the judgment obtained in these proceedings as a predicate for its claims, including those for fraudulent transfer: "[C]learly, this judgment is something that *we have to have* in order to be able to proceed in the Eastern District [of Pennsylvania]." (Dkt. 52 at 24 (emphasis added).) Thus, the Bridger Parties have an immediate and substantial interest in Eddystone's unchallenged efforts to confirm a pretextual Arbitration Award that will be used against the Bridger Parties as the basis for a fraudulent transfer claim. Because the Court did not address the fraudulent transfer claim, the Bridger Parties respectfully ask the Court to revisit its Order.

While 9 U.S.C. § 10(a) governs vacatur of an arbitration award, the Second Circuit's reasoning in *Grace* applies with equal force to the factual circumstances at issue here, particularly since Eddystone's intended use of the judgment is the same here as the plaintiffs' intended use in *Grace*. Thus, the Bridger Parties bring this issue to the Court's attention now, rather in a Rule 60 motion field after confirmation of the Award.

## II. THERE ARE NUMEROUS GROUNDS TO CONTEST CONFIRMATION.

If permitted to intervene, there are a number of bases for the Bridger Parties to challenge confirmation of the Arbitration Award, none of which would require Eddystone and JTS to resume arbitration on the merits. If the Court were to vacate the award, its decision would have no impact on the underlying settlement, the terms of which are not actually reflected in the Arbitration Award. ███████████████████████████

███████████████████████████ (*See* Dkt. 44-1, Settlement Agreement ¶ 1.)

### A. The Award Should Be Vacated.

Among other reasons, the Court could vacate the Award pursuant to 9 U.S.C. § 10(a)(1), because it "was procured by corruption, fraud, or undue means" and is no more than a collusive attempt to shift liability onto nonparties to the arbitration using a pretextual Arbitration Award that actually contradicts the terms of the underlying settlement.

The Court could also vacate the Award as against public policy, which surely does not favor the use of the confirmation process to put the imprimatur of the federal judiciary on a pretextual Arbitration Award of this nature. "When an arbitrator's award is against a public policy which is well defined and dominant, the award is unenforceable." *Local One Amalgamated Lithographers of Am. v. Stearns & Beale, Inc.*, 812 F.2d 763, 769 (2d Cir. 1987) (reversing award confirmation as violative of public policy); *see also Newsday, Inc. v. Long Island Typographical Union, No. 915, CWA, AFL-CIO*, 915 F.2d 840, 845 (2d Cir. 1990) (affirming that award should be vacated as violative of public policy).

### B. In The Alternative, The Court Could Stay Confirmation Proceedings.

Alternatively, if the Court allows the Bridger Parties to intervene, they could seek a stay of the confirmation proceedings pending further litigation in the Eastern District of Pennsylvania, which would permit the Court to take full measure of Eddystone's litigation strategy and the decisions of the court in the Pennsylvania Action before confirming the Award. "[T]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 683 (1997). Exercising such discretion, the Court has held that it may "enter a stay pending the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed." *LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005).

In its Order (at 9), the Court stated, "Eddystone must first prevail on its alter ego claim in the Pennsylvania Action before the [Bridger Parties'] interest materializes into something substantial." (*See also* Order at 10 ("Because an alter ego finding has yet to be made in the Pennsylvania Action, any purported injury that the Proposed Intervenors claim they suffered is not 'concrete in both a qualitative and temporal sense,' nor is it 'distinct and palpable' or 'actual or imminent, not conjectural or hypothetical.'") (citations omitted).) If the court in the Pennsylvania Action ultimately decides to impose alter ego liability on the Bridger Parties, however, it will almost certainly be too late for them to challenge the Arbitration Award.

Eddystone would not be harmed by a stay, since it apparently has no intention to enforce the Arbitration Award against JTS. As Eddystone made clear to this Court during the April 13, 2017 pre-motion conference, it was "suing an entity that had no assets" in the arbitration, and "so obviously [was]n't looking for a recovery against that entity." (Dkt. 24 at 9:9-11.)

### III. AT A MINIMUM, THE BRIDGER PARTIES REQUEST LEAVE TO FILE AN *AMICUS CURIAE* BRIEF.

If the Court remains unwilling to permit intervention, the Bridger Parties respectfully seek leave to submit an *amicus curiae* brief before the Award is confirmed, to address the propriety of confirmation under these unique circumstances. "District courts have broad discretion in deciding whether to accept *amicus* briefs." *Concerned Area Residents for The Env't v. Southview Farm*, 834 F. Supp. 1410, 1413 (W.D.N.Y. 1993). "An *amicus* brief should normally be allowed . . . when the *amicus* has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the *amicus* to intervene and become a party in the present case), or when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to

provide." *Automobile Club of N.Y., Inc. v. Port Authority of N.Y. & N.J.*, No. 11 Civ. 6746 (RJH), 2011 WL 5865296, at *2 (S.D.N.Y. Nov. 22, 2011) (citations omitted).

This Court has previously allowed a third party to appear as *amicus curiae* in lieu of intervention. *In re American Int'l Group, Inc. Sec. Litig.*, 916 F. Supp. 2d 454, 462 (S.D.N.Y. 2013) ("[T]he Court has discretion to permit the NYAG to appear as *amicus curiae* in lieu of intervention, and it elects to use this authority"); *United States v. Apple, Inc.*, No. 12 Civ. 2826 (DLC), 2012 WL 4513541, at *1 & n.1 (S.D.N.Y. Oct. 2, 2012) (denying motion to intervene and noting that Kohn had been granted permission to submit an *amicus* brief).

Accordingly, should the Court decline to revisit its Order denying their Motion to Intervene, the Bridger Parties respectfully request leave to submit an *amicus* brief to assist the Court before it confirms the Award. Given the pretextual nature of the Arbitration Award, the Bridger Parties are in a unique position to assist the Court, including by providing critical information that would otherwise be concealed by Eddystone or JTS. Indeed, but for the Motion to Intervene, the Court would not be aware of the terms of the underlying settlement, let alone the clear discrepancy between the settlement and the Arbitration Award.

## CONCLUSION

For the foregoing reasons, the Bridger Parties respectfully ask the Court to grant this motion pursuant to Fed. R. Civ. P. 59(e) and 60(b) and permit them to intervene in this action to challenge the Arbitration Award, or at least seek a stay of confirmation proceedings. In the alternative, Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P. request leave to file an *amicus curiae* brief addressing the propriety of confirming the Award.

Dated: March 6, 2018
      New York, New York

Respectfully submitted,

**BRYAN CAVE LLP**

By: */s/ Lawrence G. Scarborough*
    Lawrence G. Scarborough
    Jovana Crncevic
1290 Avenue of the Americas
New York, NY 10104
Tel: (212) 541-2000
Fax: (212) 541-4630
lgscarborough@bryancave.com
jovana.crncevic@bryancave.com

*Attorneys for Proposed Intervenors Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P.*